In re MADERA FARMS
PARTNERSHIP,
Debtor.

JOHN HANCOCK MUTUAL LIFE
INSURANCE COMPANY,
Appellant,

v.

MADERA FARMS
PARTNERSHIP, Appellee.

BAP No. CC–86–1058–VAbMe.

Bankruptcy No. LA 83–19892–JD.

United States Bankruptcy Appellate Panels
of the Ninth Circuit.

Argued and Submitted May 20, 1986.

Decided Aug. 29, 1986.

Jeffrey C. Krause, Stutman, Treister & Glatt, Los Angeles, Cal., for appellant.

Mark Fields, Morgan, Lewis & Bockius, Los Angeles, Cal., for appellees.

Before VOLINN, ABRAHAMS and MEYERS, Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge:

Appellant, a secured creditor holding a deed of trust with an assignment of rents clause, had stipulated that the market value of the property exceeded its debt and gave the debtor a period of time within which to sell the property. The stipulation also reserved appellant's security interest in the rents. The debtor did not sell the property within the stipulated time. Appellant thereafter conducted a foreclosure sale where it was the only bidder, credit bidding in an amount less than its debt thereby leaving a deficiency. Appellant then sought to apply accrued rents to the deficiency. Appellee contended that appellant was bound by its stipulation as to fair market value which exceeded the debt thereby leaving no deficiency and consequently allowing appellee to retain the rents. The trial court agreed. We reverse.

### I.

On April 11, 1980, Sun River Farms, Ltd., executed a promissory note in favor of John Hancock Mutual Life Insurance Company (Hancock) in the amount of $3,957,000. The note was secured by a "Deed of Trust, Assignment of Rents and Security Agreement" against property known as Madera Farms, consisting of about 2,688 acres of farm land near Fresno, California. Shortly thereafter, Sun River Farms transferred the property to the Madera Farms Partnership (Madera), subject to Hancock's deed of trust.

Madera defaulted on the note and Hancock recorded a notice of default.

An involuntary Chapter 11 petition was filed against Madera on October 27, 1983. The debtor had no creditors other than Hancock, real property taxing authorities, and administrative claimants. It also had no assets other than the property mentioned above and the rents derived therefrom.

On June 25, 1984, Hancock filed a Complaint for Relief from Automatic Stay and for Sequestration of Rents. Hancock asked for termination of the automatic stay; and for a turnover order of all rental income received since bankruptcy, or in the alternative, an order requiring the debtor to sequester all such rental income in an interest-bearing account to which Hancock's security interest could attach.

The parties entered into two stipulations during the course of the automatic stay litigation. In a Pre-trial Stipulation, the parties stipulated and agreed "solely for purposes of the above-captioned reference matter" that "the gross fair market value of the Property, without deducting any carrying costs or sale costs that might be necessary, is between $5,980,000 and $6,335,000." [1] They further stipulated that: "Madera has agreed to segregate such rental income and not to use that rental income without the consent of John Hancock or an order of this Court, but Madera contends that those funds constituting rent from the Property do not constitute 'cash collateral' within the meaning of 11 U.S.C. § 363."

A second stipulation, called the Stipulation Terminating Automatic Stay, incorporated the first one by reference. Paragraph 5 provided that:

Madera Farms shall deposit all rents, issues and profits from the Property into an interest-bearing Chapter 11 Debtor-in-

---

1. Hancock's appraiser valued the property at the higher figure, and Madera's appraiser came in at the lower figure.

Possession account, pending further order of this Court. *The security interest of John Hancock in such segregated rents, issues and profits shall be deemed to have been perfected* at all times from and after Madera Farms' agreement to segregate such rents, issues and profits on May 15, 1984. John Hancock reserves its rights, if any, to request a turnover of all such rents, issues and profits. Madera Farms reserves its rights, if any, to request authorization to use such rents, issues and profits. Madera Farms agrees that it will not use any of the funds contained in the account into which the rents, issues and profits are and will be deposited, without either the prior written consent of John Hancock or a subsequent order of this Court.

(Emphasis added.)

The bankruptcy judge approved the stipulations and terminated the automatic stay.

A nonjudicial foreclosure sale was held on November 1 or 2, 1984. Hancock purchased the property by bidding $3,910,-599.35. No other bids were made. The outstanding balance on the note at the time of sale was $4,804,721.56, greater than Hancock's bid.

On April 5, 1985, Madera filed a Motion for Order Dismissing Chapter 11 Case and Determining Invalidity of Claim. Madera argued that the nonjudicial foreclosure sale of the property, its principal asset, had made reorganization "objectively impossible." It asked the court to order that Hancock "holds no claim of any kind" against the partnership because Hancock was barred as a matter of law from recovering a deficiency judgment.

According to Hancock's opposition papers, Hancock had no objection to dismissal, "provided that Madera Farms first turns over to John Hancock all of the segregated rent now held by Madera Farms," which, as of October 23, 1984, amounted to $42,800.

The bankruptcy court heard argument on July 25, 1985. The court found that it was in the best interest of creditors and the estate to dismiss the case because "there is

no business to reorganize" after the foreclosure, and because continuation of the case "serves no purpose and causes diminution of the estate." The court concluded that Hancock was bound by all facts stipulated to in the Stipulation Terminating Automatic Stay, and specifically, the stipulation as to the fair market value of the property, citing language in the stipulation indicating that the parties intended the stipulation to be forever binding.

The court ordered that Hancock "holds no claim of any kind" against the bankruptcy estate and "holds no claim to any rents" collected by the debtor; and that the funds should be turned over to the debtor's attorneys, who were ordered to pay the remaining balance, if any, after administrative expenses to the Madera Farms Partnership.

The case was dismissed.

Hancock timely appealed from the order dismissing the case and holding invalid its claim to the rents.

## II.

Hancock contends that it is entitled to the rents because they constitute the balance of its collateral and Hancock has a perfected security interest in them. Hancock argues that the amount bid at the foreclosure sale—not the fair market value of the property—should conclusively determine the credit against its claim. Hancock further argues that California's anti-deficiency statutes, Cal.Civ.Proc.Code §§ 580a and 580d, do not apply when a creditor "seeks only to enforce its secured claim against additional collateral."

Madera contends that even though Cal. Civ.Proc.Code § 580a may not by its terms be applicable, any further recovery by Hancock from the bankruptcy estate would be unjust enrichment because the debt has been more than fully satisfied. It would also be a windfall recovery and "contrary to the equitable principles which govern the administration of bankruptcy estates." It would also be contrary to California's "clear policy against double recoveries by

secured creditors," as expressed in Cal.Civ. Proc.Code § 580a. Madera further argues that Hancock should be bound by the stipulation as to fair market value.

### A.

It is clear that the rents are additional collateral. According to the terms of the Deed of Trust, Assignment of Rents and Security Agreement, the trustor—Madera's predecessor in interest—transferred the property and rents to the trustee, in trust, "for the purpose of securing" payment of the $3.9 million note. In order "[t]o Protect the Security of this Deed of Trust," the trustor agreed:

That all of the rents, issues and profits of said property are hereby assigned to Beneficiary [Hancock] *as security* for the payment of the indebtedness ...

(Emphasis supplied.) *See Mortgage Guarantee Co. v. Sampsell*, 51 Cal.App.2d 180, 124 P.2d 353, 356 (1942).

Madera does not dispute that pursuant to the second stipulation, Hancock's security interest in the rents has been deemed to have been perfected.

### B.

Madera urges us to consider the policy behind Cal.Civ.Proc.Code § 580a, which pertains to actions for a deficiency judgment after foreclosure or trustee's sale, and provides that such deficiency be computed on the basis of fair market value at time of sale.

This statute does not apply here. By its express terms, this statute is concerned only with actions to recover deficiency judgments after the security is exhausted. *Hatch v. Security-First Nat'l Bank of Los Angeles*, 19 Cal.2d 254, 120 P.2d 869 (1942) (§ 580a); *Mortgage Guarantee Co. v. Sampsell*, supra (§ 580b). Both *Hatch* and *Sampsell* are based on the proposition that the pursuit of additional security is not pursuit of a deficiency judgment. *Freedland v. Greco*, 45 Cal.2d 462, 289 P.2d 463, 465 (1955).

### C.

Madera further argues, and the bankruptcy court so held, that Hancock should be bound by the stipulation as to fair market value. The bankruptcy court emphasized paragraphs 7 and 9 of the second stipulation, which provide:

7. In the event that the above-captioned chapter 11 case is dismissed, the terms of this stipulation shall be binding in any subsequent proceeding commenced by Madera Farms or any successor in interest of Madera Farms. But for Madera Farms' agreement to be bound by the terms of this stipulation in any subsequent proceeding, John Hancock would not have entered into this stipulation.

9. If a trustee is appointed in the above-captioned chapter 11 case, in any subsequent case under title 11 or in the above-captioned case as the consequence of a conversion thereof to a case under chapter 7, this stipulation shall be binding on any such trustee. But for the foregoing provision, John Hancock would not have entered into this stipulation.

Bankruptcy Code Section 506(a) concerns the valuation of claims in the context of determination of secured status. The legislative history of this section indicates that the value of the property for one purpose may not be the same as its value for another purpose. S.Rep. No. 95–989, 95th Cong., 2d Sess. 68 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. The reason for this is pragmatic. Appraisals are not immutable. They are estimates of value made within the context of circumstances existing at a given time. Thus, 3 Collier on Bankruptcy ¶ 506.04[2] at 506–24 (15th ed. 1986) states that Code Section 506(a) "makes reasonably clear that any valuation of collateral is temporal, and must take into consideration both the reason the valuation is being made and the contemplated disposition or use of the collateral.... The courts have virtually uniformly recognized that the value of the property securing a claim, and thus the allowed amount of the secured claim, may change during the

**104**

course of a bankruptcy case. Additionally, the need to look to the purpose of the valuation appears to have achieved virtually universal acceptance." *See In re Fairchild*, 31 B.R. 789, 795 (Bankr.S.D.Ohio 1983); *In re Vacuum Cleaner Corp. of America*, 33 B.R. 701, 704–05 (Bankr.E.D. Penn.1983); *In re BBT*, 11 B.R. 224, 229 n. 10 (Bankr.D.Nev.1981).

It may be fairly inferred from Hancock's reservation of the rents as security that there was some apprehension as to the reality of the agreed-upon value. It would not have made sense that its security interest in the rents be reserved if the value figure, which exceeded the debt, was not subject to change.

### D.

 The parties stipulated that Madera should segregate the rents; that Hancock's security interest in those rents was deemed perfected; and that Hancock reserved its rights, if any, to request turnover of those rents. The only significance of the fair market value of the property to Madera is to support its argument that equitable considerations should prevent Hancock from obtaining the rents. However, the fact that the putative fair market value of the property was greater than the amount of the indebtedness did not preclude Hancock from making a credit bid for less than that indebtedness. At a nonjudicial foreclosure sale, "[t]he mortgagee is not required to open the bidding with a full credit bid, but may bid whatever amount he thinks the property worth." *Cornelison v. Kornbluth*, 15 Cal.3d 590, 125 Cal.Rptr. 557, 569, 542 P.2d 981, 993 (1975). There is no evidence that the sale was irregular or collusive. The amount bid by Hancock therefore should be credited against its claim. This results in a balance due on the underlying debt of at least $894,122.21 (as of the time of the sale). Hancock is entitled to receive its additional security, the rents, up to such amount.

The bankruptcy court's Order Dismissing Chapter 11 Case and Holding Claim Invalid is reversed except for paragraph 4, which ordered the case dismissed.