**In re 1441 VETERAN STREET CO., Debtor.**

**GOLD COAST ASSET ACQUISITION, L.P., Appellant,**

v.

**1441 VETERAN STREET CO.,**

and

**Levene & Eisenberg, Appellee.**

No. 96–56445.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 5, 1997.

Decided July 15, 1998.

Emily Brower Miller, Pircher, Nichols & Meeks, Los Angeles, California; Brad Godshall, Pachulski, Stang, Ziehl & Young, Los Angeles, California, for the appellant.

Bennett L. Spiegel, Stuart J. Wald, Wynne Spiegel Itkin, Los Angeles, California, for the appellee.

Before: SCHROEDER and KOZINSKI, Circuit Judges, and WHYTE,* District Judge.

WHYTE, Judge:

Gold Coast Asset Acquisition, L.P. ("Gold Coast") appeals the order, entered by the bankruptcy court on March 8, 1995 and affirmed by the district court on August 13, 1996, awarding Levene & Eisenberg ("L & E"), the debtor's counsel, $100,000 in attorneys' fees out of rents generated by an apartment complex, the debtor's single asset and in which Gold Coast held a secured interest. For the reasons set forth below, we reverse the district court's decision and vacate the order entered by the bankruptcy court.

## I. BACKGROUND

On January 28, 1994, 1441 Veteran Street, Co. ("Veteran") filed for protection under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq.* At the time of filing, Veteran's only asset was a luxury apartment building (the "Property") in Los Angeles,

---

* The Honorable Ronald M. Whyte, United States District Judge for the Northern District of California, sitting by designation.

California. The Property was encumbered by a promissory note for $12 million ("the Note") and a deed of trust and assignment of rents, which were assigned to Gold Coast. Veteran owed approximately $13.4 million on the Note when it filed for bankruptcy. During the pendency of the bankruptcy proceeding, Veteran paid Gold Coast approximately $265,000 in net rents generated by the Property.

Veteran filed a plan of reorganization which proposed to reduce Gold Coast's secured claim to $8.4 million and to repay this reduced amount over a period of years. On September 7, 1994, Veteran moved under section 506(a) of the Bankruptcy Code, 11 U.S.C. § 506(a), to value the Property at $8.4 million. At the hearing on the valuation motion, the bankruptcy court held that the value of the Property was $10.1 million. This valuation determined the amount of Gold Coast's secured claim for purposes of confirming the plan of reorganization. At the subsequent confirmation hearing on September 13, 1994, however, the bankruptcy court rejected Veteran's plan and granted Gold Coast relief from the automatic stay. This relief allowed Gold Coast to exercise its remedies under state law.

On November 23, 1994, Gold Coast obtained appointment of a state court receiver for the Property ("Veteran Receiver"). The Veteran Receiver immediately began collecting rents generated by the Property. On December 20, 1994, Gold Coast conducted a nonjudicial foreclosure sale of the Property. Gold Coast purchased the Property with a credit bid of $10 million. By the time of foreclosure, the Veteran Receiver held $251,344.34 in rents. Shortly thereafter, a former receiver transferred additional rents of $80,570.58 to the Veteran Receiver making the total rents held by the Veteran Receiver $331,915.32 as of December 31, 1994.

On November 9, 1994, L & E applied for its fees as an administrative expense in the still pending bankruptcy case. See 11 U.S.C. § 503(b). Over Gold Coast's objections, the bankruptcy court awarded L & E $100,000 out of the rents held by the Veteran Receiv-er. The bankruptcy court then dismissed the case. L & E's theory, adopted by the bankruptcy court, was that Gold Coast's secured claim, previously determined to be $10.1 million, was more than fully satisfied by Gold Coast's $10 million dollar credit bid on the Property and the $265,000 in rents which Veteran directly paid to Gold Coast. The bankruptcy court found that, as a result, Gold Coast had only an unsecured claim to the remaining rents held by the Veteran Receiver. Therefore, the rents held by the Veteran Receiver were an appropriate source for L & E's attorneys' fees. See 11 U.S.C. § 507(a)(1).

Gold Coast appealed this decision to the district court. The district court accepted L & E's arguments and affirmed the decision of the bankruptcy court. This appeal followed.

## II. STANDARD OF REVIEW

■ This court reviews the district court's decision on a bankruptcy appeal *de novo. In re Tucson Estates, Inc.,* 912 F.2d 1162, 1166 (9th Cir.1990). Thus, we review the factual findings of the bankruptcy court under a clearly erroneous standard and conclusions of law de novo. *Id.* A bankruptcy court's award of attorneys' fees is subject to reversal if it is based upon an erroneous application of the law. *See in re Occidental Financial Group, Inc.,* 40 F.3d 1059, 1062 (9th Cir.1994); *In re Riverside–Linden Inv. Co.,* 945 F.2d 320, 322 (9th Cir.1991).

## III. DISCUSSION

■ To disturb a creditor's rights under traditional state foreclosure law, the federal statutory purpose must be "clear and manifest." *See BFP v. Resolution Trust Corp.,* 511 U.S. 531, 114 S.Ct. 1757, 1765, 128 L.Ed.2d 556 (1994) (citing *English v. General Electric Co.,* 496 U.S. 72, 110 S.Ct. 2270, 2275, 110 L.Ed.2d 65 (1990)). This is especially true when the Bankruptcy Code defines creditors' rights by explicit reference to nonbankruptcy law. In this case, section 552(b) of the Code provides that secured creditors shall enjoy the same rights to post-

petition rents and proceeds that they would have under state law. 11 U.S.C. § 552(b).[1]

In *BFP*, the Supreme Court held that the consideration received at a foreclosure sale may not be attacked as a fraudulent transfer under section 548(a)(2) of the Bankruptcy Code, 11 U.S.C. § 548(a)(2), as long as all requirements of state foreclosure law are satisfied. *BFP*, 114 S.Ct. at 1765. The Court reasoned in part that a valid foreclosure under state law should not be disturbed absent a clear showing of Congressional intent to the contrary. *Id.* at 1764–65.

The Supreme Court's decision in *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), further demonstrates that the Bankruptcy Code is to be read against the background of existing state insolvency laws. In *Dewsnup*, the debtor defaulted on a loan secured by a deed of trust on two parcels of land. Before a foreclosure sale, the debtor filed for reorganization under Chapter 11 of the Bankruptcy Code. That bankruptcy petition, as well as a second similar petition, were dismissed. In 1984, the debtor filed another petition seeking liquidation under Chapter 7 of the Code, 11 U.S.C. § 701 *et seq.* Because of the pendency of this bankruptcy proceeding, the creditor was unable to consummate a foreclosure sale. In 1987, the debtor filed an adversary proceeding in bankruptcy court seeking to avoid a portion of the creditor's lien. The debtor argued that the $120,000 debt exceeded the fair market value of the securing land and that, under sections 506(a) and 506(d) of the Bankruptcy Code, the bankruptcy court should reduce the amount of the lien to the market value of the land. *Id.*, 112 S.Ct. at 776. Although the Court recognized that the language of section 506 embraces some ambiguities, it held that section 506(d) does not allow a debtor to "strip down" a creditor's claim which is secured by a lien and allowed under section 502. *Id.* at 778. The Court began its analysis by noting the ambiguities surrounding section 506 and its relationship to other provisions of the Bankruptcy Code.

*Id.* at 777. Given the ambiguities in the text of section 506, the Court was unwilling to conclude that Congress "intended to depart from the pre-Code rule that liens pass through bankruptcy unaffected." *Id.* at 778. The Court also observed that the practical effect of accepting the debtor's argument would be "to freeze the creditor's secured interest at the judicially determined valuation," an approach where any increase in the value of the property by the time of foreclosure would result in a windfall to the debtor. *Id.* The Court held that "any increase over the judicially determined valuation during the bankruptcy rightly accrues to the benefit of the [secured] creditor." *Id.*

We decline L & E's invitation to read section 506(a) as cutting off a secured creditor's right to postpetition rents under section 552(b) after a plan of reorganization has failed. Section 506(a) provides:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a). Section 506(a) operates to bifurcate a secured creditor's allowed claim into secured and unsecured interests based upon the bankruptcy court's valuation of the secured property. *See Dewsnup*, 112 S.Ct. at 777. A valuation under section 506(a), however, appears to be linked to its identified purpose-e.g., a plan of reorganiza-

**1.** The 1994 amendment to section 552(b), applicable to Chapter 11 cases commenced after October 22, 1994, omits reference to "applicable nonbankruptcy law" in new subparagraph (b)(2)

dealing with rents. However, the present case was commenced before the effective date of the amendment.

tion. Section 506(a) instructs the bankruptcy court to value the property "in light of the purpose of the valuation and of the proposed disposition or use of such property." 11 U.S.C. § 506(a); *see In re Madera Farms Partnership*, 66 B.R. 100, 104 (9th Cir. BAP 1986) ("[T]he need to look at the purpose of the valuation appears to have achieved virtually universal acceptance."). It follows that when the purpose behind a particular valuation no longer exists, that valuation becomes irrelevant.

Persuasive authority also indicates that even stipulated values of property become irrelevant when the bankruptcy case fails. *See Madera*, 66 B.R. at 103–104. In *Madera*, the secured creditor which held a deed of trust with an assignment of rents stipulated that the value of the property exceeded the debt and allowed the debtor to sell the property. However, the debtor did not sell the property within the stipulated time. After the bankruptcy case was dismissed, the creditor foreclosed on the property and bought it with a credit bid in an amount less than the debt. The creditor sought to apply rents to the remainder of its claim. The BAP held that the creditor was not bound by the earlier stipulation. It noted that the rents constituted additional collateral. *Madera*, 66 B.R. at 103. It reasoned that a valuation under section 506(a) is tied to its purpose and is subject to change depending on both temporal and functional considerations. *Id.* at 103–104. The BAP went on to hold that, absent an "irregular or collusive" foreclosure sale, it is entirely proper for a

creditor to bid less than the full amount of the debt. *Id.* at 104 (citing *Cornelison v. Kornbluth*, 15 Cal.3d 590, 607, 125 Cal.Rptr. 557, 542 P.2d 981 (1975) (holding that "the mortgagee is not required to open the bidding with a full credit bid, but may bid whatever amount he thinks the property worth.")).

In the present case, the bankruptcy court valued the Property in light of Veteran's proposed plan of reorganization. Since the bankruptcy court rejected the plan, the valuation of the Property served no purpose under the Bankruptcy Code. Therefore, the valuation should not affect Gold Coast's rights to postpetition rents under section 552. The rents generated by the Property constituted Gold Coast's collateral and, thus, were an improper source for L & E's award of attorneys' fees. *See In re Cascade Hydraulics and Utility Service, Inc.*, 815 F.2d 546, 548 (9th Cir.1987) ("Administrative expenses or the general costs of reorganization may not generally be charged against secured collateral.").

L & E points to no other provision of the Bankruptcy Code which reflects an intention to allow a "strip down" of a creditor's lien based upon a section 506(a) valuation when the bankruptcy court denies confirmation of a plan of reorganization and allows a creditor to exercise its state law rights.

L & E contends, nevertheless, that the bankruptcy court's award of attorneys' fees was proper since the attorneys' fees were awarded during the pendency of the bankruptcy case. L & E argues that under section 349 of the Bankruptcy Code, 11 U.S.C. § 349, a creditor's lien is restored only when a bankruptcy case is dismissed.[2] L & E's

---

2. 11 U.S.C. § 349 provides:
    (a) Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.
    (b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title—
        (1) reinstates—
            (A) any proceeding or custodianship superseded under section 543 of this title;

(B) any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or preserved under section 510(c)(2), 522(i)(2), or 551 of this title; and
            (C) any lien voided under section 506(d) of this title;
        (2) vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title; and
        (3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

argument appears to assume that Gold Coast's lien had no effect during the pendency of the bankruptcy proceedings and, therefore, attorneys' fees were properly awarded out of rents generated by the Property. Since, according to L & E, the fees were transferred from the bankrupt's estate and thus no longer part of it, they could not become subject to a creditor's lien upon dismissal of the bankruptcy case. This contention, however, overlooks the fact that the rents generated by the Property were an inappropriate source of funds at the time of the fee award. Moreover, L & E offers no authority that section 506(a) was meant to "strip down" creditor's liens solely in order to pay attorneys' fees after a plan of reorganization has been rejected.

L & E argues that *Dewsnup* is limited to Chapter 7 cases. *See Wade v. Bradford,* 39 F.3d 1126, 1128–29 (10th Cir.1994); *In re Bowen,* 174 B.R. 840, 852–55 (Bankr.S.D.Ga. 1994); *In re Dever,* 164 B.R. 132 (Bankr. C.D.Cal.1994). However, a review of these cases reveals that *Dewsnup* is inapplicable only when a plan of reorganization has been confirmed under Chapter 11. Nothing suggests that the *Dewsnup* rationale should not apply in a case where a plan of reorganization has been rejected. Furthermore, the *Dewsnup* court's requirement that Congress' intent be "clear and manifest" in order to displace traditional state law remains applicable regardless of whether the case is a Chapter 7 or Chapter 11 proceeding.

Lastly, L & E argues that the decision below should be affirmed under the "equities of the case" exception of section 552 of the Bankruptcy Code, 11 U.S.C. § 552. However, it appears that L & E raises this argument for the first time on appeal. Therefore, L & E is precluded from raising this argument. *See United States v. Flores–Payon,* 942 F.2d 556, 558 (9th Cir.1991) ("Issues not presented to the trial court cannot generally be raised for the first time on appeal.").

In light of the foregoing, we vacate the bankruptcy court's order awarding attorneys' fees to L & E and reverse the decision of the district court affirming the bankruptcy court's order. The matter is remanded to the bankruptcy court for further proceedings in accordance with this opinion.

REVERSED AND REMANDED.