**In re Mohammad & Kausar AKRAM, Debtors.**

**No. LA 00–42035–KM.**

United States Bankruptcy Court, C.D. California.

March 6, 2001.

Edwina Dowell, Los Angeles, CA, Chapter 13 Trustee.

David Workman, Torrance, CA, for Debtors.

## OPINION RE ORDERS GRANTING *LAM* MOTIONS IN PART AND DENYING *LAM* MOTIONS IN PART

KATHLEEN P. MARCH, Bankruptcy Judge.

### I. Issue Presented

■ In a "Chapter 20" situation (chapter 7 case followed by a chapter 13 case),[1] where debtors receive a chapter 7 discharge, and then file a chapter 13 case, and successfully move to have the completely "underwater"[2] junior secured creditors lien-stripped pursuant to *Lam*[3] such that the Court grants the *Lam* motion to the extent of valuing that creditor's secured claim as zero for chapter 13 plan purposes, should the creditor's general unsecured claim under the chapter 13 plan be the full balance owed the creditor pursuant to its Note, or should the general unsecured claim for that creditor under the chapter 13 plan be zero because of the prior chapter 7 discharge?

Stated more succinctly, does a discharge in a prior chapter 7 case entitle debtors, in a subsequent chapter 13 case, to not only "*Lam*-strip" a completely underwater junior deed of trust holder's secured claim to zero secured, for chapter 13 plan purposes, but to value that "*Lam*-stripped" creditor's general unsecured claim as **zero**, for chapter 13 plan purposes, as well?

### II. Facts Relevant to Issue

Mohammad and Kausar Akram ("Debtors") filed a voluntary chapter 7 petition on July 5, 2000. The chapter 7 trustee filed a no asset report on September 26, 2000 and the Debtors received a chapter 7 discharge on October 16, 2000. Thereafter, on November 15, 2000 Debtors filed a chapter 13 petition. Debtors scheduled a single family residence in Los Angeles with a claimed fair market value of $145,000, encumbered by three deeds of trust. The beneficiary under the first deed of trust was World Savings & Loan Association. World Savings & Loan filed a proof of secured claim for $149,523.54. The beneficiary under the second deed of trust was Advanta Mortgage Corporation (hereinafter "Advanta"). Advanta filed a proof of secured claim for $73,906.98. The beneficiary under the third deed of trust was Household Finance Corporation (hereinafter "Household"). Pursuant to an account balance letter to Debtors dated 12/8/00, Household had a $43,339.19 secured claim. In addition to these secured claims, Debtors scheduled $6,250.95 of general unsecured debts.

On December 20, 2000, Debtors filed motions to "lien-strip"[4] the second and third deeds of trusts (both secured only by liens on Debtors' principle residence), pursuant to *Lam*.[5] Debtors' motions were supported by the Debtors' declarations, copies of the deeds of trusts, proofs of claims, and an account balance letter from Household. The Debtors also provided a declaration from a real estate appraiser opining that

---

1. Filing a chapter 7 petition followed by a chapter 13 petition is commonly referred to as a "Chapter 20." The United States Supreme Court has specifically held that there is no *per se* prohibition against Chapter 20 filings. *Johnson v. Home State Bank,* 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). However, the filing of multiple bankruptcies is one indicia of bad faith. *In re Huerta,* 137 B.R. 356, 367—68 (Bankr.C.D.Cal.1992) (serial chapter 13s) (citing *In re Nash,* 765 F.2d 1410, 1415 (9th Cir.1985)).

2. *See infra,* section IV for a definition of "underwater."

3. *Lam v. Investors Thrift (In re Lam),* 211 B.R. 36 (9th Cir. BAP 1997), *appeal dismissed,* 192 F.3d 1309 (9th Cir.1999). *See infra,* section IV, for a detailed discussion of *Lam.*

4. Debtors' motions were titled "Motion to Extinguish Lien of . . . ."

5. *See supra,* footnote 2.

the fair market value of their residence was $145,000.

At the hearing held January 17, 2001, this Court held that pursuant to *Lam*, the Debtors were entitled to "*Lam*-strip" the Advanta and Household deeds of trusts, thereby valuing the **secured** claims of Advanta and Household as zero for chapter 13 plan purposes, but subject to the *res judicata* limitations of *In re 1441 Veteran Street Co.*, 144 F.3d 1288 (9th Cir.1998).

In *In re 1441 Veteran Street Co.*, the Ninth Circuit Court of Appeals held that an 11 U.S.C. § 506(a) secured/unsecured bifurcation and reduction of secured claim to available collateral value is done only for a specific purpose (in that case, for purposes of a chapter 11 plan), and that this bifurcation and reduction of the amount of the secured claim to the value of the collateral available to satisfy that claim (after paying any senior liens in full) has no *res judicata* effect unless the plan is confirmed.[6] In chapter 11 cases, the chapter 11 plan usually provides that the debtor receives a discharge at or soon after confirmation. However, in chapter 13 cases, the chapter 13 debtor does not receive a discharge unless the chapter 13 debtor not only confirms, but also completely performs,[7] the chapter 13 plan. Translating what *In re 1441 Veteran Street Co.* states regarding *res judicata* effect to the chapter 13 context would mean that a lien strip for chapter 13 plan purposes should have no *res judicata* effect unless the chapter 13 debtor confirms a chapter 13 plan, and receives a discharge in his/her bankruptcy case.

Thus, in granting the *Lam*-strip, this Court ruled that if Debtors' chapter 13 plan was not confirmed, or if Debtors confirmed a plan but failed to obtain a discharge, and the *Lam*-stripped creditors later go back to foreclosing pursuant to state law, the chapter 13 *Lam*-stripped valuation of zero secured would have no *res judicata* effect. The secured claim would be the whole amount owed pursuant to the Note and the creditor would be able to foreclose as allowed by state law unless the debtor pays the full arrearage on the loan (if paid more than 5 days before the foreclosure sale), or pays the whole amount owed pursuant to the Note (if within 5 days of the foreclosure sale).[8]

At the hearing, this Court further ruled that for chapter 13 plan[9] purposes, the Advanta and Household claims should be treated as general unsecured claim in the amount of the present balance owed to each of these *Lam*-stripped creditors pursuant to their secured Notes, as of the date the *Lam* motions were granted.

Debtors' counsel agreed with the ruling as to the zero secured claims, but disagreed with the Court's ruling on the amount of the general unsecured claims for Chapter 13 plan purposes. Debtors' counsel argued that the chapter 7 case had discharged Debtors' *in personam* liability, and that as a result, when the creditors' liens were stripped pursuant to *Lam*, the creditors held no unsecured claim whatsoever. Therefore, argued Debtors' counsel, the *Lam*-stripped creditors should be treated as $0 secured, and $0 general unsecured, for chapter 13 plan purposes.

---

**6.** *In re 1441 Veteran Street Co.*, 144 F.3d at 1291–92.

**7.** A chapter 13 debtor who confirms a chapter 13 plan but fails to completely perform that plan may be eligible, on motion, to receive a "hardship" discharge, but that hardship discharge is not the "superdischarge" of chapter 13, it is the lesser discharge an eligible debtor may obtain in a chapter 7 case.

**8.** Under state law, Cal. Civ.Code § 2924c(e).

**9.** Debtors' original chapter 13 plan proposed paying 0% to the unsecured creditors (not including Advanta and Household). The Debtors then amended their plan to provide 100% to the general unsecured creditors (not including Advanta and Household). After the Court's ruling at the hearing on the issue presented herein, the Debtors amended their plan to provide 8% to the general unsecured creditors, including Advanta and Household.

At this Court's request, Debtors' counsel briefed the question of whether the general unsecured claims of the *Lam*-stripped junior lienholder for chapter 13 plan purposes, in the chapter 20 situation, was $0, or was the whole balance owed to the creditor pursuant to its Note as of the date the *Lam* motion was granted. In the supplemental briefing, Debtors' counsel argued: (1) the chapter 7 discharge, pursuant to 11 U.S.C. § 524, discharged/forgave/took away the right to enforce all unsecured claims and therefore only secured claims survived the chapter 7 discharge; (2) the effect of *Lam* is to reduce the underwater junior secured creditors' claims to zero for chapter 13 plan purposes; and (3) the joint effect of the chapter 7 discharge plus the *Lam* lien-strip is that an underwater junior secured creditor has a secured claim of zero for chapter 13 plan purposes, and has no unsecured claim at all, because any unsecured claim was already discharged in the chapter 7 case.

## III. Holding

■ This Court rejects Debtors' invitation to make flawed decisional law even worse for creditors. This Court has published an article [10] pointing out the various ways the BAP *Lam* decision is flawed, particularly because *Lam* did not place the restrictions on *res judicata* effect which are required by the reasoning of the Ninth Circuit in *In re 1441 Veteran Street Co.*[11] However, this Court recognizes that BAP decisions are highly authoritative (though not binding) and that uniformity of bankruptcy judges' decisions throughout the Circuit has benefits. Therefore, this Court grants *Lam* motions, but with the restrictions on *res judicata* effect required by the reasoning of the Ninth Circuit in *In re 1441 Veteran Street.*[12]

■ However, this Court declines Debtors' request to **extend** *Lam* to reach a result even more damaging to creditors than the result the BAP reached in *Lam*, by not only eliminating *Lam*-stripped creditors' secured claims for chapter 13 plan purposes, but by also depriving *Lam*-stripped creditors of having a general unsecured claim in the chapter 13 case.

Therefore, that portion of Debtors' *Lam* motions moving this Court to value the *Lam*-stripped creditors' secured claims as zero for chapter 13 plan purposes is granted, with the restrictions required by *In re 1441 Veteran Street Co.*;[13] but, that portion of Debtors' motions requesting this Court to value the creditors' general unsecured claims as zero for chapter 13 plan purposes is denied.

## IV. Discussion

■ The effect of the discharge that an eligible debtor receives in chapter 7 is codified at 11 U.S.C. § 524. Section 524 eliminates the debtor's *in personam* liabilities: "[the discharge] voids any judgment, at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged ... [and] operates as an injunction against the commencement or continuation of any action ... to collect ... any [discharged] debt as the personal liability of the debtor...."[14] For

---

10. Kathleen P. March and Jennifer Hildebrandt, *Lien Stripping: When You Can and When You Can't—The Law Now and What the Future May Hold,* 24 Cal. Bankr.J. 317 (1998).

11. *See supra,* footnote 5.

12. *Id.*

13. *Id.*

14. 11 U.S.C. §§ 524(a)(1), (2). *See also, Cennamo v. United States (In re Cennamo),* 147 B.R. 540 (Bankr.C.D.Cal.1992) (holding that

bankruptcy discharge operates only as a discharge of debtor's *in personam* tax liability, not debtor's *in rem* tax liability); *accord In re Isom,* 901 F.2d 744 (9th Cir.1990); *see also, Hagemann v. The Chemical Mort. Co. (In re Hagemann),* 86 B.R. 125 (Bankr.N.D.Ohio 1988) (holding that discharged debtor is protected only from *in personam* liability, not *in rem* liability on lien given as security for mortgage loan); *accord Chandler Bank of Lyons v. Ray,* 804 F.2d 577 (10th Cir.1986); *Schroeder v. First Union Nat. Bank of Virginia,* 182 B.R. 723 (D.Md.1995); *Stewart v. Underwood,* 146

those debtors eligible [15] to receive a discharge in a chapter 7 case, the section 524 discharge permanently bars prepetition debts so discharged from being enforced as the *in personam* liability of the debtor. However, section 524 does not affect, remove or discharge an *in rem* liability of property for debts.[16]   This means that liens on property are not eliminated by the discharge.[17]   Rather, liens remain on the property (or as the U.S. Supreme Court likes to put it, "liens ride through bankruptcy").[18]

Because debtors cannot get rid of liens "free" via the discharge, they seek to accomplish the next best thing, which is to force a creditor to remove its lien on property by paying the creditor holding the lien as little as possible.   "Lien-stripping" allows debtors to do this, by reducing the dollar amount of the secured claim to the value of the collateral available to satisfy

Ariz. 145, 704 P.2d 275 (1985) (holding that effect of discharge of debt under Bankruptcy Code is the same as it was under the 1898 Bankruptcy Act; it is not an extinguishment of the debt, but only a bar to enforcement of the debt as a personal obligation of the debtor).

**15.** Of course, many debtors (e.g., corporations or partnerships) are not eligible to receive any discharge whatsoever in Chapter 7, though corporations and partnerships may be eligible to receive a discharge in Chapter 11.

**16.** *See supra,* footnotes 12 and 13.

**17.** *Id. See also, In re Thompson,* 182 B.R. 140 (Bankr.E.D.Va.1995) (holding that unless security interest or lien is avoided, bankruptcy discharge has little, if any, impact on creditor's ability to proceed *in rem* against property securing claim).

**18.** *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992); *Johnson v. Home State Bank,* 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991).

**19.** Section 506(a) allows debtors to bifurcate claims into secured and unsecured claims based on the value of the collateral securing the claim

that claim, and by treating the remainder owed as a general unsecured claim.[19]  Though the secured claim will have to be paid in full, the debtor can usually discharge the general unsecured (deficiency) claim by paying that claim only a few cents on the dollar, or maybe even paying zero on that claim.

The United States Supreme Court has specifically held that lien-stripping is *not* allowed in chapter 7.[20]  *Dewsnup* held that in chapter 7, 11 U.S.C. § 506, despite its language, does not allow a debtor to strip a lien that secures an allowed claim under 11 U.S.C. § 502, even "when the value of the collateral is less than the amount of the claim secured by the lien." [21]  The United States Supreme Court reasoned that an underlying principle of bankruptcy is that "a lien on real property pass[es] through [bankruptcy] unaffected." [22]

**20.** *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

**21.** *Id.* at 412, 417, 112 S.Ct. 773.   The Supreme Court indicated that, given the ambiguity in §§ 506(a) and 506(d), the Court was not convinced that Congress intended "to depart from the pre-Code rule that liens pass through bankruptcy unaffected." *Id.* at 417, 112 S.Ct. 773.  "[T]o attribute to Congress the intention to grant a Debtor the broad new remedy against allowed claims to the extent they become 'unsecured' for purposes of § 506(a) without the new remedy's being mentioned somewhere in the Code itself or in the annals of Congress is not plausible, in our view, and is contrary to basic bankruptcy principles." *Id.* at 420, 112 S.Ct. 773.   Note that because the Supreme Court stated that lien stripping would not be permitted in chapter 7 with an "allowed claim," the implication arises that if the claim becomes disallowed, the lien can be stripped under Section 506(d).

**22.** *Id.* at 418, 112 S.Ct. 773 (stating that the "liens ride through" principle was established before the passage of the 1978 Act, and existed under the Bankruptcy Act of 1898).   The Supreme Court acknowledged that liens ride through bankruptcy in several cases.   *See Long v. Bullard,* 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886).  *Farrey v. Sanderfoot,* 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337

In chapter 13, 11 U.S.C. § 1322(b)(2) allows a debtor to "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence." In *Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), the United States Supreme Court held that 11 U.S.C. § 1322(b)(2) prohibits the removal or "strip off" of the unsecured portion of an undersecured claim from a chapter 13 debtor's principal residence. However, the *Nobelman* decision did not expressly address liens that are completely underwater (i.e., those liens that are completely unsecured because all available equity in the collateral securing those loans is consumed by senior liens).

The U.S. Supreme Court's failure to expressly mention completely underwater liens in *Nobelman* paved the way for conflicting lower court decisions as to what treatment section 1322(b)(2) permitted for completely underwater principal residence secured claims in chapter 13 cases. Some courts have held that a wholly "unsecured" lien may *not* be "stripped down" into an unsecured claim.[23] The Ninth Circuit BAP, in *Lam*, has held to the contrary, allowing a completely underwater lien on a Chapter 13 debtor's principal residence to be stripped and *avoided,* despite the anti-modification language of section 1322(b)(2).[24] In *Lam*, the BAP held that the section 1322(b)(2) antimodification provision does not prohibit modifying a claim secured only by a lien on debtor's principal residence, so long as that lien is completely "unsecured," because all available equity in the collateral is consumed up by senior liens.[25] The BAP reversed the bankruptcy court's refusal to lien strip, and remanded, directing the bankruptcy court to issue a judgment declaring the stripped lien to be *void.*[26]

*Lam* was appealed to the Ninth Circuit. However, the Ninth Circuit failed to reach the merits of the *Lam* issue, instead dismissing the appeal because of the creditor's failure to appear in any prior proceedings or properly move to have the default vacated.[27] The Ninth Circuit Court of Appeals has never, to date, ruled on the merits on the *Lam* issue. However, several other Circuit courts, plus the First Circuit BAP, have recently followed *Lam*, allowing *Lam* type lien-stripping in chapter 13 cases of *completely* underwater junior lienholders, even though these lienholders are secured only by liens on the debtor's principal residence.[28]

*Lam*, and the Circuit cases adopting the *Lam* reasoning, allow chapter 13 debtors to modify the completely underwater claims of creditors (secured only by the

---

(1991); *Johnson v. Home State Bank,* 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991).

23. *In re Shandrew,* 210 B.R. 829 (Bankr. E.D.Cal.1997) (holding that a wholly unsecured junior mortgage on Chapter 13 debtor's residence could not be stripped down into an unsecured claim by debtor's plan); *accord In re Neverla,* 194 B.R. 547 (Bankr.W.D.N.Y. 1996); *In re Jones,* 201 B.R. 371 (Bankr. D.N.J.1996); *In re Tanner,* 223 B.R. 379 (Bankr.M.D.Fla.1998).

24. *Lam v. Investors Thrift,* 211 B.R. 36 (9th Cir. BAP 1997), *appeal dismissed,* 192 F.3d 1309 (9th Cir.1999).

25. *Id.* at 41. *See also, In re Plouffe,* 157 B.R. 198 (Bankr.D.Conn.1993) (holding that a wholly unsecured junior mortgage lien can be avoided under *Nobelman* ); *accord In re Sanders,* 202 B.R. 986 (Bankr.D.Neb.1996).

26. *Lam,* 211 B.R. at 41–42. Note that pursuant to the reasoning later articulated by the Ninth Circuit Court of Appeals in *In re 1441 Veteran Street Co.,* 144 F.3d 1288 (9th Cir. 1998), the BAP *Lam* decision should not have voided the lien forever and without restriction. Rather, pursuant to the reasoning of *1441 Veteran Street Co.,* the BAP should have placed the limitation on *voiding* the lien that if the plan is not confirmed and fully performed, the 506(a) valuation would have no *res judicata* effect. But, the BAP did not place any such limitation on the voiding of the lien.

27. *Lam,* 192 F.3d at 1310 (9th Cir.1999).

28. *In re Bartee,* 212 F.3d 277 (5th Cir.2000); *In re McDonald,* 205 F.3d 606 (3d Cir.2000); *In re Tanner,* 217 F.3d 1357 (11th Cir.2000); *In re Mann,* 249 B.R. 831 (1st Cir. BAP 2000).

debtor's primary residence) into a secured claim of zero, and a general unsecured claim in the full amount of the previously secured claim. The general unsecured claim of the *Lam*-stripped creditor is generally placed in the chapter 13 plan in the same class as all other general unsecured claims. Though some bankruptcy level decisions outside the Ninth Circuit have refused to confirm "zero percent" chapter 13 plans, debtors in the Ninth Circuit often confirm chapter 13 plans that pay zero, or pennies on the dollar, to the class of general unsecured creditors, where zero percent or a low percent to general unsecured creditors constitutes the debtor's best efforts.[29]

However, neither *Lam* nor the cases from other Circuits addressed or allowed the result moved for here: that a *Lam*-stripped claim should be valued, for chapter 13 plan purposes, not only as a secured claim of zero, but also as a general unsecured claim of zero, where the debtor previously received a chapter 7 discharge. In fact, neither movant, nor this Court, found any reported case authorizing the result

here moved for, or even ruling on this "Chapter 20" twist to *Lam* motions.[30]

The binding authority most nearly on point is the holding of the Supreme Court in *Dewsnup v. Timm,* which must be read in conjunction with 11 U.S.C. § 524. As discussed *supra,* the Supreme Court in *Dewsnup* held that lien stripping is **prohibited** in chapter 7, and "liens ride through bankruptcy" unaffected. This means that even after a chapter 7 discharge, a secured debt (i.e., a debt secured by a lien on real or personal property collateral), is still secured in the full amount owed pursuant to the Note, recorded abstract of judgment, or other secured obligation, regardless of the value of the collateral securing that claim. Because lien-stripping is prohibited in chapter 7, a secured claim—even if undersecured—must be treated in the chapter 7 case as being secured in the full amount owed pursuant to the Note, recorded judgment, etc. Any reduction in the amount of the secured claim would constitute allowing lien-stripping in chapter 7, a result the U.S. Supreme Court **expressly refused** to allow in *Dewsnup v. Timm.* Therefore, in a

---

**29.** *See Downey Sav. & Loan Ass'n v. Metz (In the Matter of Metz),* 820 F.2d 1495, 1498 (9th Cir.1987) ("[t]he fact that Metz's plan provides for no payment to unsecured creditors is not sufficient to conclude that the plan was submitted in bad faith."). *Accord, Flygare v. Boulden,* 709 F.2d 1344, 1348 (10th Cir.1983) (no per se minimum payment requirement); *Barnes v. Whelan,* 689 F.2d 193, 198 (D.C.Cir. 1982) (chapter 13 requires no minimum repayment as a prerequisite to confirmation). *But see, In re Lattimore,* 69 B.R. 622, 625 (Bankr.E.D.Tenn.1987) ("a plan proposing zero payment for unsecured claims is an abuse of the purpose and spirit of Chapter 13"); *In re Heywood,* 39 B.R. 910, 911 (Bankr.W.D.N.Y.1984) (chapter 13 plan listing only secured debts remaining after chapter 7 discharge with no provisions for payments to discharged unsecured creditors is not submitted in good faith).

**30.** In fact, only one published decision reports being faced with a similar problem. In *In re Algee,* 142 B.R. 576 (Bankr.D.C.1992), the debtor filed a motion styled as "Motion to Reopen, Modify and Amend Debtor's Plan to

Declare Defendants are Unsecured Creditors to the Extent Their Claims Exceeded the Fair Market Value of Their Claimed Security on the Date of the Filing of the Plan, to Cram Down Said Claims...and Motion to Declare Said Debts Discharged." The debtor made two arguments in *Algee:* Debtor argued that he had early on attempted to object to the unsecured portion of claims secured by debtor's principal residence as discharged by virtue of his prior Chapter 7 discharge. *Id.* at 579. Debtor also argued that his residence should be valued at $65,000.00 and the secured claims therefore valued at $1,000 with the rest of their claims unsecured and treated equally with all other unsecured debt (the general unsecured class received 0% under the plan). *Id.* The *Algee* court declined to address the issue of whether any general unsecured claim of the undersecured secured creditor had been discharged in the prior chapter 7 case or not because the debtor's chapter 13 plan was a 0% plan, which would result in no payment to any general unsecured claim, regardless of whether or not a general unsecured claim survived the chapter 7 discharge.

chapter 7 case, *there is no unsecured portion* of the secured claim owed any secured creditor.

The effect of the discharge given by 11 U.S.C. § 524 is not to reduce the amount of the secured claim. Moreover, the section 524 discharge does not to split an undersecured claim into a secured component and an unsecured component. Rather, the effect of the 11 U.S.C. § 524 discharge is to prevent the creditor from seeking to collect any claim—secured or unsecured—as the *personal liability* of the debtor.[31] And this removal of *in personam* liability is the **only** effect of the section 524 discharge.

Applying this analysis to the case herein, the Debtors filed their chapter 7 case and received a discharge. The secured claims of Advanta and Household could not be, and were not, lien-stripped in the chapter 7 case, because lien-stripping is prohibited in chapter 7. Thus, at the end of the chapter 7 case, the Advanta and Household claims were still secured claims in the full amount owed to each creditor (secured claim of $73,906.98 owed to Advanta and secured claim of $43,339.19 owed Household pursuant to their Notes). These secured claims passed through the chapter 7 bankruptcy unaffected, except that the section 524 discharge precludes all creditors, including these secured creditors, from seeking to collect their claims as a personal liability of the Debtors.

As a result, at the time debtors filed their subsequent chapter 13 case, Advanta and Household each had secured claims in the full amount each of these creditors was owed pursuant to the secured Note held by each creditor. The only effect of the prior chapter 7 discharge on the secured creditors was that the secured creditors no longer had the right to collect their secured claims as an *in personam* liability of the debtors.

After filing their chapter 13 case, Debtors filed motions to *Lam*-strip the liens of Advanta and Household. The uncontroverted evidence regarding fair market value of the residence, and the amounts owed the first deed of trust holder, and to Advanta and Household, established that the secured claims of Advanta and Household could be lien-stripped for chapter 13 plan purposes, pursuant to *Lam*.

However, because the amount of these secured claims remained unaffected by the chapter 7 discharge, the "*Lam*-stripping" of these secured claims in the chapter 13 case resulted in valuing the secured claims at zero secured, for chapter 13 plan purposes, and turned the full amount owed to each creditor (pursuant to that creditor's Note) into a general unsecured claim, for chapter 13 plan purposes, i.e. a $73,906.98 general unsecured claim for Advanta for chapter 13 plan purposes, and a $43,339.19

---

**31.** The effect of *Dewsnup* and section 524 is best illustrated by looking at what would happen in the case herein if Debtors had never filed their subsequent chapter 13 case. If the senior deed of trust holder foreclosed on the residence, after the chapter 7 discharge (assuming they were entitled to do so under state law because Debtors were behind on their mortgage payments), Advanta and Household would have had a right (in their order of priority) to be paid any proceeds from the foreclosure sale remaining after the first deed of trust holder was paid in full. If the proceeds left after paying the first deed of trust holder were not sufficient to pay the claims of Advanta and Household in full, these creditors would have no right to seek to collect this deficiency from Debtors, such as by suing Debtors for this deficiency, because Debtors'

personal liability for this debt would have been discharged in the chapter 7 case. But, Advanta and Household retained all of their rights as secured creditors, despite the chapter 7 discharge. Therefore, Advanta or Household could commence foreclosure proceedings after the chapter 7 discharge, if Debtors were behind on payments owed to these creditors, unless the Debtors cured the default on the loan, or paid off the whole loan, as required by state law depending on the number of days until the foreclosure sale. *See* Cal. Civ.Code § 2924c(e). And, if the Debtors' residence increased in value, and Household and/or Advanta foreclosed as allowed by state law, Household and/or Advanta would have been entitled to that increased value in the collateral to satisfy their secured claims.

general unsecured claim for Household for chapter 13 plan purposes. Section 524 does not support Debtors' request that these unsecured claims be valued at zero for chapter 13 plan purposes, due to the prior chapter 7 discharge.

## V. Conclusion

This opinion constitutes this Court's findings and fact and conclusions of law with respect to this Court's Order entered this same date, granting Debtors' *Lam* motions in part, and denying Debtors' *Lam* motions in part, as stated herein.