**In re Chinayia and Saroj GOUNDER, Debtors.**

**No. 00–28167–A–13L.**

United States Bankruptcy Court, E.D. California, Sacramento Division.

Sept. 24, 2001.

Robert W. Fong, Scott A. CoBen & Associates, Sacramento, California, for debtors, Chinayia and Saroj Gounder.

Eric D. Houser, Malcolm, Cisneros & Houser, Irvine, California, for claimant, Real Time Solutions, Inc.

## MEMORANDUM

MICHAEL S. McMANUS, Chief Judge.

The objection to the claim of Real Time Solutions, Inc., will be overruled.

On February 28, 2001, the court entered a judgment against the claimant determining, pursuant to 11 U.S.C. § 506(a), Fed. R.Bankr.P. 3012, and *In re Lam*, 211 B.R. 36 (9th Cir. BAP 1997) *appeal dism.* 192 F.3d 1309 (9th Cir.1999), that the collateral for its claim had no value. Therefore, its claim was to be treated as an unsecured claim. 11 U.S.C. § 506(a).

Objection is now made to this unsecured claim on the ground that the debtor's personal liability was discharged in a prior chapter 7 case. The claim was duly scheduled in the prior chapter 7 case and a discharge was entered.

■ If the lien of the creditor is stripped pursuant to *Lam*, does the prior chapter 7 discharge result in disallowance of the now unsecured claim in a subsequent chapter 13 case? One court has suggested the stripped claim is an allowable claim in the chapter 13 case despite the prior chapter 7 discharge. *In re Akram*, 259 B.R. 371 (Bankr.C.D.Cal.2001). This court agrees but for somewhat different reasons.

■ The lien of a secured creditor passes through a chapter 7 case unaffected by the discharge even though the debtor's personal liability is discharged. *See Matter of Tarnow*, 749 F.2d 464, 465 (7th Cir.1984); *Matter of Penrod*, 50 F.3d 459, 461–464 (7th Cir.1995); *In re Thomas*, 883 F.2d 991, 998 (11th Cir.1989), *cert. denied*, 497 U.S. 1007, 110 S.Ct. 3245 (1990); *In re Bisch*, 159 B.R. 546, 549 (9th Cir. BAP 1993); *In re Work*, 58 B.R. 868, 873 (Bankr.D.Or.1986). Given that the lien survived the chapter 7 discharge, if a chapter 13 petition is later filed and the lien is stripped pursuant to *Lam*, the creditor must be allowed an unsecured claim despite the earlier chapter 7 discharge.

According to the bankruptcy court in *Akram*, to hold otherwise would evade the result in *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). In *Dewsnup* the Supreme Court held that a chapter 7 debtor may not strip down or strip off a lien to the extent the claim is under-collateralized. This rule would be evaded if the debtor could first file chapter 7 to discharge personal liability then file a chapter 13 petition to strip the lien without

paying the under-secured portion of the claim with other unsecured claims.

There is, however, a more compelling reason for allowing the unsecured claim resulting from the application of section 506(a) and *Lam,* the earlier chapter 7 discharge notwithstanding. In *Johnson v. Home State Bank,* 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991), the Supreme Court held that a claim discharged in a chapter 7 case but secured by property of the debtor was a "claim" within the meaning of 11 U.S.C. § 101(5) in a subsequent chapter 13 case. As noted above, the lien of a debt secured by property of the debtor survives a chapter 7 discharge. The definition of a claim in section 101(5) encompasses both a right to payment from the debtor *or* a right to payment that can be satisfied from the debtor's property. In the words of the Supreme Court, "[e]ither way, there can be no doubt that the surviving mortgage interest corresponds to an 'enforceable obligation' of the debtor." *Id.* at 2154.

In this case, the respondent has no right to enforce its claim against the debtor because of the prior chapter 7 discharge. But, as of the petition date, it had retained the right to satisfy its claim against some of the debtor's property. That property has become property of the bankruptcy estate. 11 U.S.C. § 541(a). Therefore, even though the debtor received a chapter 7 discharge, the respondent had an allowable claim in the debtor's subsequent chapter 13 case.

The use of 11 U.S.C. § 506(a) pursuant to *Lam* in the chapter 13 case resulted in the completely undersecured secured claim being converted into an unsecured claim against the chapter 13 estate (as opposed to the debtor). Section 506(a) provides in relevant part: "An allowed claim of a creditor secured by a lien of property in the estate has an interest ... is a secured claim to the extent of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim."

Suppose the claimant held a nonrecourse secured claim against the chapter 13 debtor. If the security had no value, section 506(a) would convert the nonrecourse claim against the debtor into a recourse claim against the bankruptcy estate. *See In re Triple R Holdings, L.P.,* 134 B.R. 382, 387 n. 6 (Bankr.N.D.Cal.1991), *rev. on other grounds,* 145 B.R. 57 (N.D.Cal.1992) (Citing section 506(a), the bankruptcy court held that "in the case of a nonrecourse creditor, the Code creates an unsecured deficiency claim against the estate.") The debtor cannot object to the unsecured claim on the ground that the debt was a nonrecourse debt. While the creditor may have had no recourse against the debtor, section 506(a) gives the creditor recourse against the estate. This is the price of separating the claim from its security.

The analysis is the same in this case. Effectively, the discharged debt is a nonrecourse debt. Because of the chapter 7 discharge, the claimant cannot sue the debtor but it can foreclose on its security. The intervention of the chapter 13 petition and the application of section 506(a), however, prevent it from pursuing its collateral. Consequently, the claimant has an unsecured claim against the estate. It is entitled to be paid whatever sections 1325(a)(4) [the best-interests of creditors-test] and 1325(b) [the disposable income test] require be paid to unsecured creditors, the prior chapter 7 discharge notwithstanding. 11 U.S.C. § 1325(a)(4) & (b). That may be nothing or it may be 100%.

In this case, the confirmed plan requires a 100% dividend to unsecured creditors.

However, this dividend was based on the assumption that the unsecured debt was $600.00. With claimant's claim [the claimant filed a proof of claim for $30,459.37] added to the $600.00, the unsecured debt has increased to $31,059.37. Given this material change in circumstances, the debtor is likely to seek to modify the plan as permitted by 11 U.S.C. § 1329(a). If $600.00 is all the debtor's disposable income will yield to unsecured creditors over the 40–month term of the plan and if $600.00 satisfies 11 U.S.C. § 1325(a)(4), the $600.00 will result in a whopping 1.93% dividend to unsecured creditors in a modified plan.