**In re Brenda Linh DANG, Debtor.**

**No. 3:11–bk–2970–PMG.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

March 12, 2012.

---

228

E. Warren Parker, Jr., Felecia L. Falana, Parker & DuFresne, Jacksonville, FL, for Debtor.

## ORDER ON TRUSTEE'S AMENDED OBJECTION TO CONFIRMATION

PAUL M. GLENN, Bankruptcy Judge.

**THIS CASE** came before the Court for hearing to consider the Trustee's Amended

Objection to Confirmation of the Debtor's Chapter 13 Plan.

The Debtor, Brenda Linh Dang, received a discharge in a prior Chapter 7 case on March 8, 2011, and filed the current Chapter 13 case on April 25, 2011. The issue in the current case is whether the Debtor may "strip off" a wholly unsecured junior lien on her homestead property, even though she is not eligible for a Chapter 13 discharge.

The decision of the Eleventh Circuit Court of Appeals in *In re Tanner*, 217 F.3d 1357 (11th Cir.2000), governs the resolution of this case. In *Tanner*, the Eleventh Circuit determined that a wholly unsecured lien on a debtor's residence is not protected from modification under § 1322(b)(2). The Court finds that *Tanner* allows the Debtor in this case to strip the junior lien on her homestead, even though the lien "passed through" her prior Chapter 7 case, and even though the Debtor will not receive a Chapter 13 discharge in the current case.

### Background

On September 14, 2010, the Debtor commenced her first bankruptcy case by filing a petition under Chapter 13 of the Bankruptcy Code. On her schedule of assets, the Debtor listed her homestead property located at 14421 Woodfield Circle North, Jacksonville, Florida, and listed the value of the property as $159,000.00. The homestead property was encumbered by three mortgages in the aggregate amount of $316,366.00.

On November 9, 2010, the Trustee filed a Motion to Dismiss the first case, and alleged that the Debtor was not eligible to be a debtor under Chapter 13 because her debts exceeded the limits provided by § 109 of the Bankruptcy Code.

On November 15, 2010, the Debtor converted the first Chapter 13 case to a case under Chapter 7 of the Bankruptcy Code. She received a discharge in the Chapter 7 case on March 8, 2011.

On April 25, 2011, the Debtor filed the petition that commenced the current Chapter 13 case. On her schedules in the current case, the Debtor again listed the homestead property with a value of $159,000.00, and again listed three mortgages on the property in the total amount of $316,366.00.

On April 27, 2011, the Debtor filed a Chapter 13 Plan in the current case. According to the Plan, the first and second mortgages on the property are not in default, and the Debtor proposes to continue making the regular payments on those mortgages outside the Plan. With respect to the third mortgage, the Plan provides:

> Bank of America holds a third mortgage on the debtors' homestead property located at 14421 Woodfield Circle North, Jacksonville, Florida 32258. The debtors shall file an adversary proceeding against this creditor to value its lien against the homestead property at $0.00. A validly filed Proof of Claim, if any, by this creditor shall be wholly unsecured.

(Doc. 10, p. 2). As indicated by the Plan, the Debtor filed an adversary proceeding against Bank of America to value its interest in the Debtor's homestead at $0.00 and to strip the Bank's lien. (Adv. Pro. 3:11–ap–232–PMG). A Default Judgment was entered against the Bank on June 28, 2011.

### Discussion

In his Objection to Confirmation, the Trustee asserts that the Debtor's Plan cannot be confirmed because it does not satisfy the requirements of § 1325 of the Bankruptcy Code. According to the Trustee, § 1325(a)(5)(B) does not permit the Debtor to strip Bank of America's lien from her homestead property, as proposed

in the Plan, because the Debtor is not eligible for a Chapter 13 discharge.

■ The Court finds that the Debtor may strip the wholly unsecured junior lien from her homestead, even though the lien passed through her prior Chapter 7 case, and even though she will not receive a Chapter 13 discharge in the current case.

## I. Wholly unsecured residential liens may be valued and modified in Chapter 13 cases.

■ In Chapter 13 cases, "[i]t is well settled law that where a lienor's collateral value is insufficient to support at least part of the lien, the creditor does not hold a secured claim for purposes of bankruptcy, and its lien can be 'stripped off' the collateral." *In re Gruenberg,* 2011 WL 1115001, at *2 (Bankr.S.D.Fla.). The "well settled law," as stated in *Gruenberg,* was established by the Eleventh Circuit Court of Appeals in *In re Tanner,* 217 F.3d 1357 (11th Cir.2000).

### A. The law of the Circuit

■ In the federal judicial system, "[w]hen no Supreme Court decision has been issued, the decisions of the court of appeals for a particular circuit are binding on all lower courts within the circuit." *In re Barakat,* 173 B.R. 672, 677 (Bankr. C.D.Cal.1994). "A decision of a panel on the court of appeals becomes the law of the circuit." *In re Barakat,* 173 B.R. at 677.

■ Under this system, Bankruptcy Courts in Florida are bound by decisions issued by the Eleventh Circuit Court of Appeals. *In re Itzler,* 247 B.R. 546, 548 (Bankr.S.D.Fla.2000); *In re Petersen,* 222 B.R. 382, 385 (Bankr.M.D.Fla.1998). With respect to the modification of wholly unsecured residential liens, therefore, this Court is bound by the decision of the Eleventh Circuit in *In re Tanner,* 217 F.3d 1357 (11th Cir.2000). See *In re Dickerson,* 222 F.3d 924, 926 (11th Cir.2000)("[U]nder the prior precedent rule we must apply the rule established by this court in *In re Tanner.*")

### B. *Tanner*

In *In re Tanner,* 217 F.3d 1357 (11th Cir.2000), a Chapter 13 debtor asked the Bankruptcy Court to value the second mortgage on her homestead at $0.00, because the value of the home did not exceed the amount owed on the first mortgage, and then to strip off the second mortgage as an unsecured claim. The Bankruptcy Court found that the second mortgage was a secured claim that could not be modified under the debtor's Chapter 13 plan, and denied the debtor's request. The District Court affirmed.

On appeal, the Eleventh Circuit reversed the lower Courts' decision, finding that the appeal "lies at the intersection of two provisions of the bankruptcy code: 11 U.S.C. § 506(a) and 11 U.S.C. § 1322(b)(2)." *In re Tanner,* 217 F.3d at 1358. Section 506(a) "defines the secured and unsecured components of debts according to the value of the underlying collateral," and § 1322(b)(2) permits a Chapter 13 debtor's plan to "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence."

The Eleventh Circuit evaluated the two provisions against the backdrop of the Supreme Court's decision in *Nobelman v. American Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). In *Nobelman,* the Supreme Court had determined that § 1322 "prohibits a Chapter 13 debtor from relying on § 506(a) to reduce an *undersecured* homestead mortgage to the fair market value of the mortgaged

residence." *Nobelman,* 508 U.S. at 325–26, 113 S.Ct. 2106(Emphasis supplied). Under this ruling, a Chapter 13 debtor cannot modify a residential lien that is partially secured and partially unsecured, based on a valuation under § 506(a), because the mortgagor is the holder of a secured claim that is protected by § 1322(b)(2).

The issue before the Eleventh Circuit in *Tanner* was whether the *Nobelman* decision applies not only to residential liens that are partially secured and partially unsecured, but also to residential liens that are wholly unsecured.

The Eleventh Circuit found that § 1322(b)(2) "protects only mortgages that are secured by some existing equity in the debtor's residence." *In re Tanner,* 217 F.3d at 1360.

> We agree with those courts that the only reading of both sections 506(a) and 1322(b)(2) that renders neither a nullity is one that first requires bankruptcy courts to determine the value of the homestead lender's secured claim under section 506(a) and then to protect from modification any claim that is secured by any amount of collateral in the residence. (Citations omitted). *Any claim that is wholly unsecured, however, would not be protected from modification under section 1322(b)(2).* To hold otherwise and extend the antimodification clause to even wholly unsecured claims would vitiate the *Nobelman* Court's pronouncement that "[debtors] were correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim." 508 U.S. at 328, 113 S.Ct. at 2110.

*In re Tanner,* 217 F.3d at 1360(Emphasis supplied). According to the Eleventh Circuit, its decision was consistent with the rights that a wholly unsecured creditor would possess outside of bankruptcy, since the foreclosure of the property would not produce any return to the lienholder. *Id.* at 1360(quoting *In re Lam,* 211 B.R. 36, 40 (9th Cir. BAP 1997), *appeal dismissed,* 192 F.3d 1309 (9th Cir.1999)).

In *Tanner,* therefore, the Eleventh Circuit Court of Appeals determined that § 1322(b)(2) does not protect a wholly unsecured residential lien from modification in a Chapter 13 plan. This Court is bound by the decision in *Tanner* as the law of the Circuit.

In the matter before the Court, the Debtor had disclosed her residence and Bank of America's lien in a prior bankruptcy case. The Debtor received a Chapter 7 discharge, and Bank of America's lien survived the prior case. Shortly after receiving her discharge, the Debtor commenced the current case, and filed a Chapter 13 Plan which proposes to "strip" the Bank's lien from her homestead. The Debtor acknowledges that she is not eligible to receive a discharge in the current case. (Doc. 31, ¶ 12). The question before the Court is whether the circumstances of the prior Chapter 7 case and the Debtor's discharge distinguish the present case from the Eleventh Circuit's ruling in *Tanner.* The Court finds that they do not.

**II. A wholly unsecured lien may be modified in a Chapter 13 case, even if the lien "passed through" a prior Chapter 7.**

It is well-settled that liens, as *in rem* interests in property, "pass through" or survive a Chapter 7 bankruptcy. *In re Wycuff,* 332 B.R. 297, 300–01 (Bankr. N.D.Ohio 2005) (quoting *Johnson v. Home State Bank,* 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) and *Owen v. Owen,* 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991)).

232

A creditor's lien stays with the real property until foreclosure, and passes through a Chapter 7 bankruptcy unaffected. *In re Dippel*, 2005 WL 758801, at *4 (S.D.Fla.)(citing *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992)).

## A. A claim in the Chapter 13 case

In *Johnson v. Home State Bank*, 501 U.S. 78, 80, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991), the Supreme Court addressed the question of "whether a debtor can include a mortgage lien in a Chapter 13 bankruptcy reorganization plan once the personal obligation secured by the mortgaged property has been discharged in a Chapter 7 proceeding." To answer the question, the Supreme Court evaluated the rights associated with the surviving lien:

> [A] mortgage interest that survives the discharge of a debtor's personal liability is a "claim" within the terms of § 101(5). Even after the debtor's personal obligations have been extinguished, the mortgage holder still retains a "right to payment" in the form of its right to the proceeds from the sale of the debtor's property.... [T]here can be no doubt that the surviving mortgage interest corresponds to an "enforceable obligation" of the debtor.

*Johnson*, 501 U.S. at 84, 111 S.Ct. 2150. Based on the rights associated with the surviving lien, the Supreme Court held that a mortgage lien remains a claim that can be included in a Chapter 13 case, even where the Chapter 13 debtor's personal obligations had been discharged in a prior Chapter 7 case. *Id.*

## B. Characterizing the claim as secured or unsecured

■ A lien that has passed through a prior Chapter 7 case is a claim that can be included in a subsequent Chapter 13 case. The next issue, therefore, is whether the claim should be characterized as a secured claim or an unsecured claim. The characterization has significant consequences in a Chapter 13 case, because the status of the claim determines how it may be treated in the Chapter 13 plan.

■ Since a lien that has survived a Chapter 7 case is a claim against property in a subsequent Chapter 13 case, the debtor may apply § 506 to the claim to determine whether it is a secured claim or an unsecured claim. *Nobelman*, 508 U.S. at 328–29, 113 S.Ct. 2106. Section 506(a) provides in part:

> § 506. Determination of secured status
>
> (a)(1) An *allowed claim of a creditor secured by a lien on property in which the estate has an interest, ... is a secured claim* to the extent of the value of such creditor's interest in the estate's interest in such property, ... *and is an unsecured claim* to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim....

11 U.S.C. § 506(a)(Emphasis supplied). The section "defines the secured and unsecured components of debts according to the value of the underlying collateral." *In re Tanner*, 217 F.3d at 1358.

With respect to the treatment of a residential lien in a Chapter 13 plan, the Eleventh Circuit in *Tanner* found that the proper approach was to "*first* require[ ] bankruptcy courts to determine the value of the homestead lender's secured claim under section 506(a)." *Id.* at 1360(Emphasis supplied). To support its approach, the Eleventh Circuit quoted the Supreme Court's "pronouncement" in *Nobelman* that "[d]ebtors were correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim." *Id.* at 1360(quoting

*Nobelman v. American Savings Bank,* 508 U.S. at 328, 113 S.Ct. 2106).

Under *Tanner,* therefore, where a debtor seeks to include a residential lien in his Chapter 13 plan, he may first apply § 506(a) to the lien to determine whether it is a secured claim or an unsecured claim. *Tanner,* of course, involved a debtor's initial bankruptcy case. There is no section of the Bankruptcy Code, however, that prohibits the application of § 506 in sequential or repeat cases.

First, a former Chapter 7 debtor is not prohibited from filing a Chapter 13 case. "Congress provided no limitation on a debtor's eligibility to be a chapter 13 debtor after receiving a chapter 7 discharge." *In re Jennings,* 454 B.R. 252, 258 (Bankr.N.D.Ga.2011)(citing 11 U.S.C. § 109, and *In re Lewis,* 339 B.R. 814 (Bankr.S.D.Ga.2006)).

Second, since a former Chapter 7 debtor is eligible to be a debtor in a new Chapter 13 case, he may use any of the provisions of Bankruptcy Code that are available to Chapter 13 debtors, unless specifically prohibited. *In re Jennings,* 454 B.R. at 258.

Specifically, a number of courts have held that a repeat filer may use § 506(a) to determine the secured status of a claim. In *In re Okosisi,* 451 B.R. 90 (Bankr. D.Nev.2011), for example, a Chapter 13 debtor sought to modify a lien on his homestead after receiving a discharge in a prior Chapter 7 case. Before reaching the modification question, the Court found that it was first required to determine whether the creditor had a secured claim under § 506(a). *In re Okosisi,* 451 B.R. at 93(citing *In re Zimmer,* 313 F.3d 1220, 1226 (9th Cir.2002), and *Nobelman,* 508 U.S. at 328, 113 S.Ct. 2106). Similarly, in *In re Davis,* 447 B.R. 738 (Bankr.D.Md.2011), a former Chapter 7 debtor sought to modify a junior lien on his homestead in a subsequent Chapter 13 case. In granting the debtor's request, the Court recognized that "the proper starting point in the Chapter 13 lien-stripping analysis is with a valuation under Section 506(a)." *In re Davis,* 447 B.R. at 744–45 (citing *First Mariner Bank v. Johnson,* 411 B.R. 221 (D.Md.2009), *aff'd,* 2011 WL 52358 (4th Cir.)).

Based on the foregoing, the Court finds that a lien that has survived a Chapter 7 case is a claim against property in a subsequent Chapter 13 case. Consequently, the debtor may apply § 506(a) to the claim to determine whether it is a secured claim or an unsecured claim.

## C. Application of § 506(a)

Bankruptcy Courts in Florida have found that a lien that passed through a prior Chapter 7 case is necessarily a secured claim in a subsequent Chapter 13 case. Those Courts have further held that the secured claim cannot be modified in the repeat debtor's Chapter 13 plan.

In *In re Gerardin,* 447 B.R. 342 (Bankr. S.D.Fla.2011), for example, the Court addressed seven separate Chapter 13 cases in which the debtors previously had received Chapter 7 discharges. In each case, the debtor sought to "strip" a junior lien that had passed through the prior case. *In re Gerardin,* 447 B.R. at 343. The Court found that the debtors were not permitted to remove the liens through their Chapter 13 plans.

The critical portion of the Court's analysis is its determination that "the claim that exists after the Debtors' chapter 7 discharge is a secured claim." *Id.* at 346. In reaching this determination, the Court recognized that "the creditors' mortgage liens survived the Debtors' chapter 7 discharges." *Id.* at 346(citing 11 U.S.C. § 522(c)(2), *Johnson,* 501 U.S. at 83, 111 S.Ct. 2150, and *Dewsnup v. Timm,* 502 U.S. 410, 417, 112 S.Ct. 773, 116 L.Ed.2d

903 (1992)). The Court also recognized the *Johnson* rule that a creditor who has "a claim enforceable only against the debtor's property nonetheless has a 'claim against the debtor' for purposes of the Code." *In re Gerardin*, 447 B.R. at 346(quoting *Johnson*, 501 U.S. at 85, 111 S.Ct. 2150). Based on these well-settled principles, the Court concluded that *"on the petition date*, each creditor had *an allowed secured claim* against a Debtor's bankruptcy estate in the form of a mortgage lien encumbering the Debtor's property." *In re Gerardin*, 447 B.R. at 347(Emphasis supplied).

Essentially, the Court concluded that the surviving claim *must* be a secured claim in the Chapter 13 case, because the debtors' personal liability for the claim had been discharged in the prior Chapter 7. Id. at 346. This reasoning was later adopted in *In re Quiros–Amy*, 2011 WL 4526081, at *4–6 (Bankr.S.D.Fla.), in which the Court stated that it was "impossible for the junior lienholder to have anything other than an 'allowed secured claim' against the bankruptcy estate," because (1) the debtor's *in personam* liability had been discharged in the prior case, and (2) the creditor retained an enforceable claim against the property.

This Court agrees with the decisions in *Gerardin* and *Quiros–Amy* to the extent that they found that the junior lienholder held a claim against property on the date that the Chapter 13 petition was filed. The Court finds, however, that the secured status of the claim may then be determined during the Chapter 13 case pursuant to § 506(a) of the Bankruptcy Code, and that the lienholder's claim may be characterized as a secured claim or an unsecured claim for purposes of its treatment in the Chapter 13 plan.

Under the Eleventh Circuit's decision in *Tanner*, when evaluating the treatment of a residential lien in a Chapter 13 case, Bankruptcy Courts are first required to determine the status of the lender's secured claim under § 506(a). *Tanner*, 217 F.3d at 1360(citing *Nobelman's* finding that the debtors "were correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim."). To determine the status of a lienholder's claim, "we first determine whether the creditor holds a secured claim by looking to § 506(a)." *In re Fisette*, 455 B.R. 177, 182 (8th Cir. BAP 2011). The rights of a residential lienholder in a Chapter 13 case are determined "after applying section 506(a)." *In re Jennings*, 454 B.R. at 255(citing *Tanner, Nobelman*, and *In re Nwogbe*, 451 B.R. 90, 93 (Bankr.D.Nev.2011)).

For the reasons discussed above, the status of the secured claim may be determined under § 506(a), even if the debtor had filed a prior bankruptcy case.

### D. Conclusion

The Debtor in this case seeks to "strip" a junior lien from her residential real property. The lien was a claim secured by the Debtor's homestead at the time that she filed her Chapter 13 petition. *Johnson*, 501 U.S. at 84, 111 S.Ct. 2150. The secured status of the claim may be determined pursuant to § 506(a) of the Bankruptcy Code. *Tanner*, 217 F.3d at 1360; *Nobelman*, 508 U.S. at 328, 113 S.Ct. 2106.

After applying § 506(a), it was determined that Bank of America's claim is wholly unsecured. Under the law of the Circuit, a wholly unsecured residential lien is not protected from modification under § 1322(b)(2) of the Bankruptcy Code. *Tanner*, 217 F.3d at 1360. The wholly unsecured claim may be modified in the Debtor's Chapter 13 plan, even though it "passed through" a prior Chapter 7 case.

**III. A wholly unsecured lien may be modified in a Chapter 13 case, even if the debtor will not receive a discharge.**

The Debtor stipulates that she is not eligible for a discharge in the current Chapter 13 case, because she received a Chapter 7 discharge "during the 4–year period preceding the date that the petition was filed." 11 U.S.C. § 1328(f)(1). Because the Debtor is not eligible for a Chapter 13 discharge, the Trustee asserts that she is not entitled to strip Bank of America's junior lien from her homestead.

**A. Inapplicability of § 1325(a)(5)**

A number of Courts have found that a debtor is precluded from stripping a wholly unsecured lien from the debtor's real property, if he is not entitled to receive a discharge in the Chapter 13 case. *In re Sadowski*, 2011 WL 4572005 (Bankr. D.Conn.); *In re Orkwis*, 457 B.R. 243 (Bankr.E.D.N.Y.2011); *In re Gerardin*, 447 B.R. 342 (Bankr.S.D.Fla.2011). These Courts rely on § 1325(a)(5) of the Bankruptcy Code to support their conclusion that a discharge is required to permanently modify the claims.

Section 1325(a)(5) provides in part:

§ 1325. Confirmation of plan

(a) Except as provided in subsection (b), the court shall confirm a plan if—

. . .

(5) with respect to each *allowed secured claim* provided for by the plan—

(A) the holder of such plan has accepted the plan;

(B)(i) the plan provides that—

(I) the holder of such claim retain the lien securing such claim *until the earlier of*—

(aa) the payment of the underlying debt determined under nonbankruptcy law; or

(bb) *discharge under section 1328;*

. . .

(C) The debtor surrenders the property securing such claim to such holder.

11 U.S.C. § 1325(a)(5) (Emphasis supplied). Generally, this section provides that "unless the [claimant] consents, or the Debtors surrender the Property to the [claimant], the [claimant's] mortgage lien remains as a lien on the Property until payment of its claim in full under applicable non-bankruptcy law or entry of the Debtors' discharge." *In re Orkwis*, 457 B.R. 243, 244 (Bankr.E.D.N.Y.2011).

As the prefatory language to subsection 1325(a)(5) indicates, the provision applies only to "allowed secured claims." In decisions which have relied on § 1325(a)(5) to preclude a debtor from stripping a residential lien, the Courts had first determined that the lien was a "secured claim" in the Chapter 13 case.

If the lien is a wholly unsecured claim after making the determination under § 506(a), however, the requirements of § 1325(a)(5) do not apply to the claim.

Section 1325(a)(5), including its specific subsection that was cited by the Chapter 13 trustee, § 1325(a)(5)(B)(i)(I)(bb), does not apply in the case of a wholly unsecured lien on a debtor's principal residence. (Citation omitted). The requirements under § 1325(a)(5) only apply when there is value in the collateral to support the lienholder's claim; the plain language of that section specifies that it applies to an *"allowed secured claim."* 11 U.S.C. § 1325(a)(5)(emphasis added). As we explained, *Nobelman* instructs us to first look to § 506(a) to classify the claim as secured or unsecured. *See Nobelman*, 508 U.S. at 328, 113 S.Ct. 2106, 124 L.Ed.2d 228 . . . . Where the collateral retains no value to support the lienhold-

er's claim, like in this case, a creditor does not have a secured claim and the requirements of § 1325(a)(5) do not apply.

*In re Fisette,* 455 B.R. 177, 185 (8th Cir. BAP 2011). See also *In re Jennings,* 454 B.R. 252, 259 (Bankr.N.D.Ga.2011)("Given the second mortgagees' status as holders of unsecured claims for purposes of the chapter 13 plans, the Court finds that section 1325(a)(5) does not apply."), and *In re Okosisi,* 451 B.R. at 98(A wholly unsecured creditor after application of § 506(a) "is not the holder of a secured claim, and as such, Section 1325(a)(5), which, by its language applies only to secured claims, does not apply to the wholly unsecured creditor.").

Based on the foregoing, the Court finds that § 1325(a)(5) does not apply to claims that are wholly unsecured pursuant to a determination under § 506(a) of the Bankruptcy Code.

## B. Conclusion

A number of decisions have found that a debtor who is ineligible for a Chapter 13 discharge cannot strip a wholly unsecured lien from his property. In those decisions, the Courts relied on § 1325(a)(5) to support their conclusion that a discharge is required to permanently modify the claims. By its terms, § 1325(a)(5) applies only to "allowed secured claims."

Under *Nobelman* and *Tanner,* Courts must first look to § 506(a) to determine whether a lien is secured or unsecured. If the lien is wholly unsecured pursuant to § 506(a), § 1325(a)(5) does not apply to the debtor's treatment of the claim in his Chapter 13 plan.

Accordingly, a wholly unsecured lien may be modified in a Chapter 13 plan, even if the debtor will not receive a discharge in the case.

## IV. The Chapter 13 Plan remains subject to the other requirements of the Bankruptcy Code.

The Court has found that wholly unsecured liens may be modified through a Chapter 13 plan, even if the lien "passed through" a prior Chapter 7, and even if the debtor will not receive a discharge in the Chapter 13 case. In order to be confirmed, however, a plan that provides for the modification of a lien must nevertheless comply with the applicable requirements of § 1325 of the Bankruptcy Code.

### A. The good faith requirement

Section 1325 contains two separate good faith requirements. Section 1325(a)(3) provides that the plan must have been "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). Section 1325(a)(7) provides that the "action of the debtor in filing the petition" must have been in good faith. 11 U.S.C. § 1325(a)(7). The "basic inquiry" under the good faith requirement is whether there has been "an abuse of the provisions, purpose or spirit" of Chapter 13. *In re Kitchens,* 702 F.2d 885, 888 (11th Cir.1983)(quoted in *White v. Waage,* 440 B.R. 563, 567 (M.D.Fla.2010)).

In cases of sequential filings, an issue may arise as to whether the debtor is attempting to avoid the ruling of the United States Supreme Court in *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). In *Dewsnup,* the Supreme Court held that a debtor may not strip down a lien in a Chapter 7 case.

It is generally accepted that a debtor may file a Chapter 7 case and receive a discharge, and may thereafter file a Chapter 13 case and obtain the benefits of that Chapter other than a discharge. 11 U.S.C. § 1328(f)(1). If the debtor seeks to strip a lien in the Chapter 13 case, however, the issue is whether he is at-

tempting to achieve through multiple filings what he could not achieve in the Chapter 7 case. In other words, the question is whether he is "using Chapter 13 as a way to circumvent *Dewsnup's* prohibition against lien stripping in Chapter 7." *In re Sadowski,* 2011 WL 4572005, at *4 (Bankr. D.Conn.). The debtor's intent in filing the later case and seeking to strip the lien may impact on the good faith analysis under § 1325(a)(3) and § 1325(a)(7).

In this case, the Debtor and the Trustee stipulated that the Debtor's Plan was proposed in good faith. (Transcript, p. 4).

The Debtor's first case was originally filed as a Chapter 13 on September 14, 2010. (Case No. 10–7985). On the same date that the petition was filed, the Debtor filed a Chapter 13 Plan that provided for the treatment of Bank of America's lien as an unsecured claim. Nine days after the petition date, on September 23, 2010, the Debtor filed an adversary proceeding to value the Bank's claim at $0.00 and to strip the Bank's lien. (Adv. Pro. 10–479). The Debtor pursued the adversary proceeding in her first case by promptly filing a Motion for Default and Default Judgment against the Bank. An Order granting the Motion for Default Judgment was entered on November 10, 2010.

On November 9, 2010, the Trustee filed a Motion to Dismiss the Debtor's first Chapter 13 case, and alleged that the Debtor was not eligible to be a debtor under Chapter 13 because her unsecured liabilities exceeded the limits prescribed by § 109(e) of the Bankruptcy Code. Shortly thereafter, on November 15, 2010, the Debtor filed a Notice of Conversion of the case to a case under Chapter 7. She received her Chapter 7 discharge on March 8, 2011.

On April 25, 2011, the Debtor filed the petition that commenced the current Chapter 13 case.

Under these circumstances, it appears that the Debtor's two bankruptcy cases were not filed with a design to circumvent *Dewsnup's* prohibition against lien stripping in Chapter 7 cases. The Debtor initially filed a Chapter 13 case, and diligently pursued a lien-stripping action against the Bank, as permitted in the initial Chapter 13, until the Trustee moved to dismiss the case. It was not the Debtor's plan to first obtain a Chapter 7 discharge, and then to strip the lien from her homestead in a subsequent Chapter 13 case. See *In re Jennings,* 454 B.R. 252 (Bankr.N.D.Ga. 2011)(The Court permitted lien-stripping in the debtors' second Chapter 13 case, where their first case was originally filed as a Chapter 13, which the debtors funded for two years before conversion.). Accordingly, the Trustee and the Debtor stipulated that bad faith is not an issue in the current case, and that the Debtor's Plan was filed in good faith. (Transcript, p. 4).

**B. Payment of the unsecured claim**

Section 1325(a)(4) of the Bankruptcy Code provides that the amount of distributions under a plan "on account of each allowed unsecured claim" must not be less than the amount that would be paid on the claim if the estate were liquidated under Chapter 7. 11 U.S.C. § 1325(a)(4).

■ Where a lien is determined to be an "unsecured claim" pursuant to § 506(a), and the lien is stripped under a debtor's chapter 13 plan, the creditor may assert an unsecured claim in the Chapter 13 case. See *In re Gruenberg,* 2011 WL 1115001, at *2 (Bankr.S.D.Fla.). Further, a creditor whose lien has been stripped may assert an unsecured claim the Chapter 13 case, even if the debtor's personal liability for the claim had been discharged in a prior Chapter 7. *In re Gounder,* 266 B.R. 879, 881 (Bankr.E.D.Cal.2001) ("[E]ven though the debtor received a chapter 7 discharge,

the respondent had an allowable claim in the debtor's subsequent chapter 13 case.")

While the creditor may have had no recourse against the debtor, section 506(a) gives the creditor recourse against the estate. This is the price of separating the claim from its security.

... Effectively, the discharged debt is a nonrecourse debt. Because of the chapter 7 discharge, the claimant cannot sue the debtor but it can foreclose on its security. The intervention of the chapter 13 petition and the application of section 506(a), however, prevent it from pursuing its collateral. Consequently, the claimant has an unsecured claim against the estate. It is entitled to be paid whatever sections 1325(a)(4) [the best—interests of creditors—test] and 1325(b) [the disposable income test] require be paid to unsecured creditors, the prior chapter 7 discharge notwithstanding.

*In re Gounder*, 266 B.R. at 881. See also *In re Eaton*, 2006 WL 6810924, at *6 (9th Cir.BAP)(If a lien is stripped in a Chapter 13 case that followed a Chapter 7 discharge, the lienholder "gets paid as an unsecured creditor."); *In re Hill*, 440 B.R. 176, 183 (Bankr.S.D.Cal.2010)(A creditor whose lien had been stripped would be entitled to its pro rata share of the distributions under the plan, despite the prior chapter 7 discharge.); and *In re Haque*, 331 B.R. 524, 527–28 (Bankr.D.Mass. 2005)(A creditor whose lien was avoided was entitled to payment on its unsecured claim in a Chapter 13 case).

Bank of America filed a Proof of Claim in the Debtor's case. (Claim No. 5). Based on the record, however, the Court cannot determine whether the Plan's proposed treatment of the Claim satisfies the requirements of § 1325(a)(4) of the Bankruptcy Code.

## Conclusion

The Debtor received a discharge in a prior Chapter 7 case on March 8, 2011, and filed the current Chapter 13 case on April 25, 2011. The Trustee has objected to confirmation of the Debtor's Chapter 13 Plan, and asserted that she is not entitled to "strip off" a wholly unsecured junior lien on her homestead property, because she is not eligible for a Chapter 13 discharge.

The decision of the Eleventh Circuit Court of Appeals in *In re Tanner*, 217 F.3d 1357 (11th Cir.2000) governs the resolution of this case. In *Tanner*, the Eleventh Circuit held that a wholly unsecured lien on a debtor's residence is not protected from modification under § 1322(b)(2). The Court finds that *Tanner* allows the Debtor in this case to strip the junior lien from her homestead, even though the lien "passed through" her prior Chapter 7 case, and even though the Debtor will not receive a Chapter 13 discharge in the current case.

Accordingly:

**IT IS ORDERED** that the Trustee's Amended Objection to Confirmation of the Debtor's Chapter 13 Plan is overruled, without prejudice to the Trustee's right to file a further Amended Objection in the event he determines that the Debtor's Plan does not otherwise comply with the requirements of the Bankruptcy Code.