**IN RE: Tracey Jo HOFFMAN, Debtor.**

**Bankruptcy Case No. 15–40391–JDP**

United States Bankruptcy Court,
D. Idaho.

Signed September 17, 2015

Kathleen A. McCallister, Boise, ID, Chapter 13 Trustee.

Alexandra O. Caval, Twin Falls, ID, Attorney for Debtor.

John Ritchie, Twin Falls, ID, Attorney for Robert and Kathi Meyers.

## MEMORANDUM OF DECISION

Jim D. Pappas, United States Bankruptcy Judge

### *Introduction*

Chapter 13 [1] trustee Kathleen A. McCallister ("Trustee") objects to confirmation of the plan proposed by debtor Tracey Hoffman ("Debtor"). To resolve the objection, the Court must decide whether two claims filed in the case, based upon debts for which the debtor is not personally liable, may be treated as allowed unsecured claims, and may share in distributions under Debtor's proposed chapter 13 plan. After conducting a confirmation hearing, and having considered the parties' briefs and arguments, as well as applicable law, this Memorandum constitutes the Court's findings of fact and conclusions of law. Fed. R. Bankr.P. 7052.

### *Facts*

The material facts are simple and undisputed.[2]

Debtor lived with her parents in their home for an extended time, caring for them when they became ill. When her parents could not pay the debts secured by the home, creditors Robert and Kathi Meyers ("the Meyers"), obtained a state court decree authorizing them to foreclose a deed of trust. The Meyers scheduled the home for a sheriff's sale to occur on April 30, 2015. However, before the sale, Debtor's parents passed away.

On April 27, 2015, Debtor commenced a probate proceeding in state court and was appointed to act as the personal representative of her parents' estate. On April 28, 2015, Debtor, acting as personal representative, conveyed the home to herself as an individual.

On April 29, 2015, Debtor filed a chapter 13 petition commencing this bankruptcy case. On July 2, 2015, Debtor proposed an amended chapter 13 plan ("Plan"). Dkt. No. 32.

According to the Plan, an appraisal obtained by Debtor on the home indicates its value is $86,000. *Id.* at ¶ 5.2. The house is encumbered by three liens, but Debtor is not personally liable for any of the debts secured by these liens. The first and second priority liens are deeds of trust securing loans made to Debtor's parents by the Meyers. The other encumbrance on the house is a statutory lien asserted by the State of Idaho for Debtor's parents' unpaid Medicaid expenses of over $315,000.

The balance due on the Meyers' first deed of trust is about $74,000. The Plan proposes to cure the existing default on this debt with monthly payments to be made through the Plan by Trustee. *Id.* at ¶ 5.3 Debtor will directly make the current monthly payments on this loan. *Id.* at ¶ 5.2.

The second deed of trust balance is about $22,000. Given the value of the house, and the amount owed on the first deed of trust, this debt is only partially secured. The Plan proposes to pay about $12,000 on this debt, representing the amount of equity in the house securing the debt in monthly payments, together with interest, via Trustee. *Id.* The Plan proposes that the balance of this debt will constitute an unsecured claim, and that the Meyers will share in the pro rata distribu-

---

1. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

2. These facts are derived primarily from the parties' pleadings and briefs.

tions to be made to unsecured creditors by Trustee.[3] *Id.* at ¶ 5.2 & 7.2.

Because there is no equity in the house over and above the amounts owed on the Meyers' liens to secure the State of Idaho's claim, the Plan proposes to "strip" the statutory lien from the house, and to treat this claim as wholly unsecured. *Id.* at ¶ 5.4. The State of Idaho will share in pro rata plan distributions to unsecured creditors. *Id.* at ¶ 7.2.

The Plan will not pay the unsecured claims in full.[4]

After appropriate notice, neither the Meyers nor the State of Idaho objected to the Plan's proposed treatment of their claims. Indeed, the Meyers, who are represented by counsel in the bankruptcy case, have seemingly consented to this treatment.[5]

Trustee, for her part, acknowledges that the Plan's proposals to cure and maintain the Meyers' first deed of trust debt, to "cram down" the second deed of trust, and to strip the State of Idaho's statutory lien, are proper under the Code. Even so, Trus-

tee objected to the Plan's proposal to pay any amounts to the Meyers and the State of Idaho as unsecured creditors. Dkt. No. 39. Trustee contends that the treatment of these two obligations as unsecured claims in the bankruptcy case, and their payment under the Plan on a pro rata basis with Debtor's own unsecured debts, should not be allowed because Debtor is not personally obligated to pay either the Meyers or State of Idaho. Dkt. No. 44, p. 5. Put another way, Trustee argues, under the Plan, Debtor's parents' creditors are being paid at the expense of Debtor's own creditors.

Resolution of Trustee's objection is the sole impediment to confirmation.[6] To resolve it, the Court must determine whether Debtor's proposal to pay the debts owed by her parents to the Meyers, and to the State of Idaho, as allowed unsecured claims is appropriate in this case.

### *Analysis and Disposition*

#### I.

A chapter 13 plan may "designate a class or classes of unsecured claims ...."

3.  Normally, under § 1322(b)(2), the rights of creditors whose debts are secured only by a security interest in the debtor's house may not be modified in a chapter 13 plan. Apparently, however, the note secured by the Meyers' second deed of trust will mature during the term of the Plan, and therefore, as provided in § 1322(c), it is not protected by the Code's "anti-modification" provision.

4.  The claims register in this case reflects that a variety of claims were filed by creditors for unsecured debts personally owed by Debtor. The total amount of these claims is, however, dwarfed by the amount of the State of Idaho's claim, meaning that these other creditors will receive only a minimal share of the prorated plan distributions to unsecured claimants.

5.  In a refreshing display of pragmatism, the Meyers' attorney informed the Court at the hearing that, in their view, the Plan proposes to pay the Meyers as much, perhaps even more, than they would receive on their claims

were there no bankruptcy filing and they were left to foreclose on the house. While the Meyers' share of payments to unsecured creditors will be meager, assuming Debtors' parents had no other assets, they are undoubtedly correct that the Plan's treatment of the second deed of trust claim represents a favorable outcome for them.

6.  While Debtor transferred the home to herself shortly before filing her bankruptcy petition in an obvious, last-minute attempt to prevent the foreclosure sale, significantly, neither Trustee nor any of the creditors have alleged that Debtor's bankruptcy case was not filed, or the Plan proposed, in good faith. See § 1325(a)(3), (7) (providing that, to be confirmed, a debtor's case, and the proposed plan, must be filed in good faith.). The lack of a good faith objection is likely justified by the fact that her parents' house had also served as Debtor's home for some time, and her sincere desire to save the home from foreclosure.

§ 1322(b)(1). However, "a plan may place a claim … in a particular class only if such claim … is substantially similar to the other claims … in such class." *Id.*; § 1122(a). And, if a plan does classify unsecured claims, it "shall provide for the same treatment of each claim within [that] class …." § 1322(a)(3).

In this case, the Plan requires Debtor to make a total of 60 monthly payments to Trustee. Dkt. No. 32, ¶ 2.1. After provisions for payments to administrative, priority and secured claimants, the Plan proposes that there be a single class of unsecured claims, and provides the same treatment of all claimants within that class. *Id.* at ¶ 7.2 ("… the Trustee will, from funds available after payment of priority and secured claims, pay pro-rata dividends to all Creditor(s) who have filed timely allowed unsecured claims."). It is this term of the Plan that Trustee targets as improper. Simply stated, the confirmation issue raised by Trustee is whether the Meyers and the State of Idaho hold "allowed unsecured claims" under the Code so that they may share in distributions under the Plan. If so, Debtor's classification and treatment of those claims in the Plan in the same fashion as all of Debtor's other unsecured debts is appropriate, and the Plan should be confirmed. If the Meyers and State of Idaho do not hold allowed unsecured claims, they can not properly be classified and treated the same as creditors holding allowed unsecured claims based on Debtor's personal debts.

## II.

■ What constitutes a "claim" in a bankruptcy case is "a straightforward issue of statutory construction to be resolved by reference to the text, history, and purpose of the Bankruptcy Code." *Johnson v. Home State Bank,* 501 U.S. 78,

83, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) (internal quotation marks omitted). Under the Code, a "claim" may be either a:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

§ 101(5). Commenting on this definition, this Court has observed that "Congress intended this language to adopt the broadest definition of 'claim'" and that the "'right to payment' [means] nothing more or less than an enforceable obligation …" *In re KM Allied of Nampa,* 11.2 IBCR 69, 70–71 (Bankr.D.Idaho 2011) (citing *Pennsylvania Dept. of Pub. Welfare v. Davenport,* 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990)).

■ Here, outside of the bankruptcy case, it is undisputed that the Meyers and the State of Idaho do not hold a right to payment from Debtor personally. Instead, they are "nonrecourse" creditors, who can look only to the Debtor's home for satisfaction of their debts. *In re KM Allied of Nampa, LLC,* 11.2 IBCR at 71 (quoting *First Fed. Bank of Cal. v. Weinstein (In re Weinstein),* 227 B.R. 284, 292 (9th Cir. BAP 1998) (describing the rights of a nonrecourse creditor)).

## III.

### A.

■ Do the Meyers' and the State of Idaho's limited rights constitute a "claim" in Debtor's bankruptcy case as

contemplated in § 101(5)? In a case with somewhat similar facts, the Court has previously answered this question in the affirmative.

In *KM Allied of Nampa,* a chapter 11 debtor had executed a deed of trust and UCC fixture filing on its property in favor of a bank to secure another party's debt. *Id.* at 70. In the debtor's later bankruptcy case, based upon the Supreme Court's holding in *Johnson,* this Court decided that while the debtor was not personally liable for the debt, the bank's right to resort to the debtor's property to collect the debt was sufficient to constitute a "claim" in the chapter 11 case under § 101(a)(5). *Id.* at 71.

A review of the reasoning of *Johnson* is also appropriate here. As the Court explained in that decision, the Code's definition of "claim" under § 101(5) includes nonrecourse claims because such a creditor "still retain[s] a 'right to payment' in the form of its right to proceeds from the sale of the debtor's property," and the "creditor's surviving right to foreclose on the mortgage can be viewed as a 'right to an equitable remedy' for the debtor's default on the underlying obligation." *Id.* at 71 (quoting *Johnson,* 501 U.S. at 84, 111 S.Ct. 2150). Applying this reasoning to the facts in that case, the Court concluded that "there [was] no doubt that [a] surviving mortgage interest corresponds to an 'enforceable obligation' of the debtor." *Id.* (quoting *Johnson,* 501 U.S. at 84, 111 S.Ct. 2150). Thus, the bank held a claim.

### B.

The conclusion by the Supreme Court, and by this Court, that a nonrecourse creditor's rights in a debtor's property constitutes a claim for bankruptcy purposes is also supported by other provisions of the Code.

Under § 501(a), a "creditor" may file a proof of claim in a bankruptcy case. A "creditor" includes any "entity that has a claim against the debtor that arose at the time of or before the order for relief." § 101(10). A debtor's commencement of a bankruptcy case by the filing of a voluntary petition constitutes an order for relief. §§ 301(a), (b). And, as § 102(2) provides, a " 'claim against the debtor' *includes claim against property of the debtor....*' " As this Court observed, a "fair reading of this section would mean a creditor who has a claim enforceable only against the debtor's property nonetheless has a claim against the debtor for purposes of the code." *In re KM Allied of Nampa,* 11.2 IBCR at 71 (quoting *Johnson* 501 U.S. at 85, 111 S.Ct. 2150) (emphasis added)). The collective import of these Code provisions is that an entity that is owed a debt that is secured by the debtor's property on the date of the filing of the bankruptcy petition is a creditor, holds a claim, and may file a proof of claim in that bankruptcy case.

■ However, the terms of another provision of the Code, § 502, govern whether that claim will be "allowed" in the bankruptcy case. The rules are simple enough. A creditor's properly-filed proof of claim is "deemed allowed" unless a party in interest objects to it. § 502(a). If there is an objection to the claim, § 502(b)(1) requires the bankruptcy court to allow it "except to the extent that ... such claim is unenforceable against the debtor *and* property of the debtor." (emphasis added). Since a nonrecourse claim can be enforced against the debtor's property, it constitutes an allowed claim in the bankruptcy case. Stated another way, under the Code, if a nonrecourse creditor files a proof of claim in the property-owner's bankruptcy case, that claim will be deemed allowed unless an interested party objects to it. But even if

there is an objection to the nonrecourse creditor's claim, it must be allowed because it is enforceable against the debtor's property.

### C.

In addition to the statutory language, the reasoning in *Johnson* was also based on the "legislative and background history" of the Code. 501 U.S. at 85, 111 S.Ct. 2150. Reviewing the background history of the Code, the Supreme Court inferred that Congress fully expected that the definition of claim under § 101(5), "may consist of nothing more than an obligation enforceable against the debtor's property." *Id.* at 86, 111 S.Ct. 2150. This inference was supported by the legislative history surrounding the adoption of § 102(2); it demonstrated that Congress intended this provision to extend to "all interests having the relevant attribute of nonrecourse obligations where the creditor's rights are against the property of the debtor, and not the debtor personally." *Id.* at 87, 111 S.Ct. 2150.

### IV.

Here, as in *Johnson* and *KM Allied of Nampa*, the claims of the Meyers and the State of Idaho are secured by liens on Debtor's property, the house.[7] And like the creditors in those cases, the Meyers and the State of Idaho cannot seek recovery from Debtor personally. Despite this, as of the date of the bankruptcy filing, both the Myers and the State of Idaho had a right to payment from the proceeds of the sale of Debtor's house that was subject to their liens. And, in the absence of a voluntary sale, they could also have sought to invoke an equitable remedy to enforce their liens: to foreclose on Debtor's property. In short, the Meyers and the State of Idaho are creditors that hold "claims" for purposes of this bankruptcy case.

These claims were also allowed claims in this bankruptcy case. Both the Meyers and the State of Idaho have properly filed proofs of claim in Debtor's bankruptcy case. Because there has been no objection to them, the claims are deemed allowed in this case. Indeed, at this point in the bankruptcy case, even had objections to the claims been filed, the Court would be required to allow their claims to the extent of the full amount the Meyers and State of Idaho were owed as of the date of the bankruptcy filing because their liens remain enforceable against Debtor's property.

### V.

■ But are the allowed claims held by the Meyers and the State of Idaho "allowed unsecured claims" such that they can be properly paid pro rata along with other unsecured creditors under the Plan?

The Trustee contends that because the Plan proposes to avoid a portion of the Meyer's second deed of trust, and to strip the State of Idaho's statutory lien, under § 506(a), the then-unsecured portions of those claims are no longer enforceable against either Debtor or Debtor's property, and thus, would no longer be allowed

---

7. Of course, unlike the debts in this case and in *KM Allied of Nampa*, the debt in *Johnson* was incurred by the debtor. However, as this Court noted, this is a "distinction without a difference." *In re KM Allied of Nampa,* 11.2 IBCR at n.13. Based on the Supreme Court's conclusion that Congress intended to extend the reach of § 102(2) "to all interests having the relevant attributes of nonrecourse obli- gations *regardless of how these interests come into existence* [,]" this Court held that if two scenarios "reflect situations where the creditor has a 'claim' against a debtor's property but not against the debtor personally" there is "no material distinction" between them. *Id.* at n.13 & 71 (emphasis added). The same analysis applies concerning the claims before the Court today.

unsecured claims. Taking a contrary view, Debtor argues that the Plan's provisions bifurcating the Meyers' second deed of trust claim, and stripping the State of Idaho's statutory lien, have no effect on the determination of whether the claims are allowed unsecured claims. While the parties' arguments highlight a question that has puzzled the courts, under these facts, the Court agrees in this case with Debtor.

## A.

This issue is one of first impression for the Court. As noted above, while this Court has addressed the possible treatment of a nonrecourse claim in a chapter 11 case, the Court is persuaded that the treatment of liens in chapter 13 is sufficiently different to warrant a different analysis than in that chapter 11 case. *See In re KM Allied Nampa,* 11.2 IBCR at 72.

██ Other bankruptcy courts that have considered this question, most in the context of a "chapter 20" case,[8] have employed different reasoning and reached different conclusions.[9] Today, the Court concludes that the unsecured portions of claims resulting from the bifurcation or stripping of nonrecourse creditors' liens under § 506 are indeed allowed unsecured claims, but

does so for slightly different reasoning than relied upon in other decisions.

Section 506(a) provides, "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and *is an unsecured claim* to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim." (emphasis added). As can be seen, the Code expressly dictates that the portion of a claim secured by a debtor's property that exceeds the value of that property is an unsecured claim. Indeed, as the Supreme Court has observed, when a claim is bifurcated under § 506(a), the result is two claims, a secured claim and an unsecured claim. *U.S. v. Ron Pair Enter., Inc.,* 489 U.S. 235, 239 & n. 3; 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (explaining that "[S]ection 506(a) requires a bifurcation into *separate and independent secured claim and unsecured claim components.*") (emphasis added); *In re Enewally,* 368 F.3d 1165, 1168 (9th Cir.2004) (stating that, by operation of § 506(a), a secured loan may be separated into two distinct claims.).

---

8. A "chapter 20" case is where a debtor has obtained a chapter 7 discharge, and then later sought to use a chapter 13 plan to strip down or off undersecured liens, even though the debtor will not be eligible for a second discharge.

9. *Compare, e.g., In re Eaton,* BAP No. EC–05–1261–PaNMa, 2006 WL 6810924 (9th Cir. BAP Feb. 28, 2006) (in an unpublished decision, holding that a would-be secured creditor whose claim is allowed only as unsecured gets paid as an unsecured creditor); *Victorio v. Billingslea,* 470 B.R. 545 (Bankr.S.D.Cal. 2012) (holding such claims are allowed); *In re Akram,* 259 B.R. 371 (Bankr.C.D.Cal.2001) (finding § 524 does not support valuing such claims at zero, as doing so would provide a result forbidden by *Dewsnup v. Timm,* 502

U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992)); *In re Gounder,* 266 B.R. 879 (Bankr. E.D.Cal.2001) (holding such claims become an allowed unsecured claim against the estate and must be paid); *with In re Sandrin,* 536 B.R. 309 (Bankr.D.Colo.2015) (holding such claims must not be paid because doing so provides a remedy not provided in state law without a specific code provision directing to do so); *In re Rosa,* 521 B.R. 337 (Bankr. N.D.Cal.2014) (finding such claims are disallowed, expressly disagreeing with *Akram* and *Gounder*); *In re Sweitzer,* 476 B.R. 468 (Bankr.D.Md.2012) (holding such claims are disallowed because the in personam rights discharged in chapter 7 could not be resurrected and allowed as unsecured claims in a subsequent chapter 13 case).

Some courts have concluded that the language of § 506(a), standing alone, effectively converts a nonrecourse claim against the debtor's property to recourse claim against the bankruptcy estate. *Gounder*, 266 B.R. at 881 (stating that a debtor cannot seek disallowance of the claim under § 502(b)(1), because § 506(a) gives the creditor recourse against the estate); *see also In re Dang*, 467 B.R. 227, 238 (Bankr. M.D.Fla.2012); *In re Hill*, 440 B.R. 176, 183 (Bankr.S.D.Cal.2010). While the Court tends to agree with this notion, even if § 506(a) does not supply the complete answer to the question, and instead, § 502 controls whether the unsecured claim resulting from bifurcation or a lien-strip is allowed (or not), in Debtor's case, the creditors' claims in this case constitute allowed unsecured claims.

### B.

Section 1327 of the Code outlines the effect of confirmation of a plan. Section 1327(a) explains that a confirmed plan in binding on the debtor and each creditor. And §§ 1327(b) and (c) dictate the effect of confirmation on creditors' interests in property of the estate. In relevant part, § 1327(b) provides that confirmation of a plan "vests all the property of the estate in the debtor." Section 1327(c) requires that, unless otherwise provided in the plan or in the order confirming the plan, the property that vests in the debtor does so "free and clear of any claim or interest of any creditor provided for by the plan."

According to Trustee, assuming the creditors' liens are removed from Debtors' property via confirmation of the Plan, the claims of the Meyers and the State of Idaho should then be disallowed under § 502(b)(1), because those claims are then "unenforceable against the debtor and property of the debtor ... for a reason other that because such claim is contingent

or unmatured." She contends that since these debts are nonrecourse, and may not be enforced against Debtor personally, once they are no longer enforceable against Debtor's property, they must be disallowed.

The Court disagrees with the premise of Trustee's argument. Recall, under § 1327(c), property revests in the debtor "free and clear of any claim ... of a creditor provided for by the plan" unless "otherwise provided in the plan...." Thus, the Court must look to the Plan to determine the effect of Plan confirmation on the Meyers' and the State of Idaho's liens. In doing so, the Court concludes that Trustee's contention that the creditors' bifurcated or stripped liens are "unenforceable" post-confirmation is inconsistent with the language of the Plan.

The Plan makes clear that the State of Idaho's statutory lien will be retained, post-confirmation, until Debtor completes the Plan. *See* Amended Chapter 13 Plan, Dkt. No. 32, ¶ 5.4 (providing "To each of these creditors, your timely filed claims will be treated in this plan as unsecured claims and *upon the successful completion of this plan* your lien will be avoided.") (emphasis added). In other words, until Debtor completes the Plan, the statutory lien of the State of Idaho remains enforceable against Debtor's property.

In regards to the Meyers' second deed of trust lien, while the Plan seemingly calls for the avoidance of the lien to the extent it exceeds any equity in the house upon confirmation of the Plan, the Plan also provides that "[i]f the case is dismissed or converted without completion of the plan, such lien shall be retained by the secured creditors to the extent recognized by applicable nonbankruptcy law [*i.e.*, the full amount of the lien]." *Id.* at ¶ 5.2. Thus, the partial avoidance of the Meyers' second deed of trust lien is also contingent

on Debtor's successful completion of the Plan.[10] Indeed, if Debtor fails to complete the plan, and the case is either converted to another chapter or dismissed, that lien will be fully effective.[11] This contingent treatment of the Meyers' lien is an important factor in deciding whether the claim should be disallowed since, under § 502(b)(1), a claim is only disallowed if it is unenforceable against the debtor and the debtor's property *"for a reason other than because such claim is contingent."* (emphasis added).

Because, under the Plan, the State of Idaho's lien is retained, and because the Meyer's second deed of trust lien is only contingently avoided, the claims of both creditors are not subject to disallowance under § 502(b)(2). Therefore, Trustee's position that, if the Plan is confirmed, the claims of the Meyers and the State of Idaho are no longer "enforceable" against Debtor's house is incorrect. To the contrary, the Plan's proposal to pay these claims as allowed unsecured claims is appropriate.

### C.

Treating the claims of the Meyers and the State of Idaho as allowed unsecured claims is required in this case for another, even more conspicuous, reason. No doubt, if confirmed, the Meyers and the State of Idaho would be bound by the terms of the Plan. § 1327(a). As a result, during the

term of the Plan, these creditors would be limited to the right to receive only pro rata distributions as unsecured creditors; they would not be entitled to enforce their avoided or stripped liens against Debtor's property.

Even so, no interested party has objected to the allowance of those creditors' proofs of claim. Because of this, the claims of the Meyers and the State of Idaho are "deemed allowed" under § 502(a), and will continue to be so unless and until an interested party objects and the Court disallows them. And because the creditors' liens remain potentially enforceable against Debtor's property until the Plan is completed, even were an objection filed, under § 502(b)(1), the Court would be required to allow the creditors' claims.

### Conclusion

The Court concludes that Trustee's objection to confirmation of the Plan should be overruled, and that the Plan should be confirmed. The Code compels this conclusion. If the Plan is confirmed, § 506(a) dictates that, to the extent the value of Debtor's property is less than the amount of the claims of the Meyers and the State of Idaho secured by liens on Debtor's house, those claims will constitute allowed unsecured claims. In addition, the Plan provides that the State of Idaho will retain its lien until the completion of the Plan, and that the avoidance of the Meyers' lien

---

10. Unlike in a chapter 11 case, where under § 1141(a), confirmation of plan constitutes a discharge, in a chapter 13 case, discharge, and likewise, permanent avoidance of a stripped lien, is conditioned on the debtor's successful completion of the plan. § 1328; *see also In re Okosisi*, 451 B.R. 90, 96 (Bankr.D Nev.2011); *In re Boukatch*, 533 B.R. 292, 301 (9th Cir. BAP 2015) (explaining that in a typical chapter 13 case, the lien avoidance becomes permanent upon entry of discharge).

11. These provisions of the Plan are consistent with the requirements of the Code. For example, if Debtor fails to complete the Plan, and the case were to be converted to chapter 7, § 348(f)(1)(C)(i) provides that "the claim of any creditor ... shall continue to be secured by that security ... notwithstanding any [§ 506(a)] valuation or determination of the amount of an allowed secured claim ..." If, instead, the case were to be dismissed, § 349(b)(1)(C) provides that any lien voided under § 506(d) is reinstated.

is contingent on completion. Since the creditors will continue to have potentially enforceable liens against Debtor's house even after confirmation, the creditors hold allowed claims. For all these reasons, Debtor's proposal to pay the Meyers and the State of Idaho pro rata along with Debtor's other unsecured debt is proper.

A separate order will be entered.